UNITED STATES DISTRICT COURT
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAMUEL WILLIAMS, PPA DAVID WILLIAMS, DAVID WILLIAMS and TARA WILLIAMS,<br><br>Plaintiffs,<br><br>v.<br><br>GREATER BOSTON HOTEL EMPLOYEES, LOCAL 26/HEALTH AND WELFARE TRUST FUNDS BOARD OF TRUSTEES, THE COLONNADE HOTEL, HEALTHCARE VALUE MANAGEMENT, INC. , and MED TAC CORPORATION<br><br>Defendants. | CIVIL ACTION No. 04 CV 10338 WGY |

DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants Greater Boston Hotel Employees, Local 26 Health and Welfare Trust Funds Board of Trustees ("Trustees"), the Colonnade Hotel ("Colonnade"), Health Care Value Management, Inc. ("HCVM") and Med Tac Corp. ("Med Tac") (collectively "Defendants") submit this memorandum of law in support of their motion to dismiss the Complaint of Plaintiffs Samuel Williams ("Samuel"), David Williams ("David") and Tara Williams ("Tara") (collectively "Plaintiffs") for failure to state a claim upon which relief can be given.

The gist of Plaintiffs' case is that they were denied medical benefits related to Samuel's birth and subsequent emergency surgery. They assert three claims for relief under the Employee Retirement Income Security Act of 1974 ("ERISA") to recover those benefits. However, as fully set forth below, an arbitrator concluded (and Plaintiffs do not dispute) that Plaintiffs had failed to comply with two mandatory requirements of the employee benefit plan and, as such, were not

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

entitled to the claimed medical benefits. The arbitrator's decision is entitled to deference as a matter of law, and the Complaint should be dismissed in its entirety.

## FACTS AS ALLEGED IN THE COMPLAINT

I.   The Preferred Provider Plan.

The Trustees provide an employee welfare benefit plan called the Preferred Provider Plan ("Plan"). Complaint, ¶ 1. A copy of the Plan is attached hereto at Exhibit A. The purpose of the Plan is to provide for the payment or reimbursement of medical expenses incurred by eligible hotel employees in the greater Boston area and their covered dependents. Complaint, ¶ 1. Benefits payable under the Plan are through a trust fund established by the Trustees. Id. According to the Complaint, the Plan is administered by Med Tac and made available through HVCM. Id. Claims for benefits under the Plan are submitted to Med Tac for approval. Id. However, ultimately, the Trustees have sole responsibility for payment of benefits under the Plan. Id.

For medical services relating to maternity care and childbirth, the Plan contains two mandatory preconditions for the payment of benefits: (1) approval by Modern Assistance Programs ("MAP") for all hospital admissions and (2) enrollment in the Healthy Baby Program. Both requirements are set forth in a section entitled CONDITIONS OF PAYMENT, which states in part:

> **STRICT COST CONTAINMENT PROGRAMS APPLY TO CERTAIN SERVICES UNDER THIS PLAN WHEREBY, IN ACCORDANCE WITH THE SCHEDULE OF MEDICAL BENEFITS, IF SUCH PROGRAMS ARE NOT FOLLOWED AND COMPLIED WITH, NO BENEFITS ARE PAYABLE FOR SUCH SERVICES WHETHER CARE IS RENDERED BY PREFERRED OR NON-PREFERRED PROVIDERS.**
>
> **SPECIFICALLY, MODERN ASSISTANCE PROGRAMS, INC. (MAP) IS A UTLIZATION REVIEW AND CASE MANAGEMENT**

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

> **ORGANIZATION THAT MUST BE CONTACTED FOR APPROVAL OF CERTAIN SERVICES IN ACCORDANCE WITH THE SCHEDULE OF MEDICAL BENEFITS, INCLUDING ALL HOSPITAL ADMISSIONS. . . . IF MAP DOES NOT APPROVE SUCH SERVICES AS REQUIRED, THEN NO BENEFITS ARE PAYABLE FOR THESE SERVICES.  IN ADDITION, PREGNANT WOMEN MUST CONTACT THE TRUST OFFICE AND ENROLL IN THE HEALTHY BABY PROGRAM.  IF THE TRUST OFFICE IS NOT CONTACTED AS REQUIRED FOR MATERNITY AND NEWBORN BABY CARE SERVICES, THEN NO BENEFITS ARE PAYABLE FOR THESE SERVICES.**

Ex. A, Summary Plan Description, §1.2.

In several other sections, the Plan reiterates the requirement of prior approval from MAP.  First, in the Schedule of Medical Benefits section, the Plan states that "**MAP is a utilization review and case management organization that must be contacted for approval of certain services as indicated below, including ALL Hospital admissions.**"  Id., § 2.1.  In a chart describing coverage for types of services, the Plan states that prior MAP approval is required for all inpatient surgery, and if approval is not obtained, "NO benefits are payable for these services."  Id.  Finally, in the General Exclusions section, the Plan states that no benefits shall be paid with respect to "Charges for any services provided to a Covered Person without prior approval from MODERN ASSISTANCE PROGRAMS, INC. (MAP) when such services require MAP prior approval, as indicated in the Schedule of Medical Benefits."  Ex. A, Summary Plan Description, § 6.1 (20).

The Plan also reiterates several times that the Healthy Baby Program is mandatory for all pregnant plan participants.  The Schedule of Medical Benefits section states that "**Pregnant women must contact the Trust Office and enroll in the Healthy Baby Program as soon as the Physician confirms pregnancy.**"  Id., § 2.1.  If the participant fails to enroll in the program, "**then NO benefits are payable for these services.**"  Id.  In a chart setting forth covered services, the Plan makes clear that coverage for inpatient maternity care and newborn baby care

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

is dependent upon prior approval and enrollment in the Health Baby Program.  Id.  This requirement is restated in the General Exclusions section of the Plan, which states that benefits will not be paid for "Charges for Newborn Baby Care and Maternity Care provided to a Covered Person who has not enrolled in the Healthy Baby Program as required in accordance with the Schedule of Medical Benefits."  Ex. A, § 6.1(21).

The Plan provides for a process by which a participant may appeal a denial of benefits.  In support of any such appeal, the participant may submit "written comments, documents, records or other information."  Ex. A, Summary Plan Description, § 7.4.  The Plan's review of the appeal shall include all such submitted information.  Id.  The Trustees have authority under the Plan to appoint an individual or committee to serve as "Claims Reviewer."  Id.  The Plan states that the Claims Reviewer "shall have discretionary authority to interpret and apply the terms of the Plan to specific claims on a consistent basis for all similarly situated Claimants.  The decision of the Claims Reviewer in this review will be final and binding upon MED TAC, the Trustees and all Claimants under the Plan."  Id.

II.     The Circumstances Relating To Samuel's Birth.

David is employed by the Colonnade as a server in the hotel's restaurant.  Complaint, ¶ 10.  Since the start of his employment in 1998, he has been a participant in the Plan.  Complaint, ¶¶ 1, 10.

In December 2001, David and Tara (not yet married) learned that they were expecting a baby.  Complaint, ¶ 11.  While the Plan required them to enroll in the Healthy Baby Program upon learning of the pregnancy, Plaintiffs do not allege that they enrolled in that program at that time.

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

In February 2002, David and Tara learned through an ultrasound that the baby may have a disease called gastroschesis. Complaint, ¶ 12. Thereafter, David contacted the Human Resources department at the Colonnade "in an effort to find out what he needed to do to switch his health care policy from a single status to a family plan status." Id., ¶ 13. He explained that he and Tara were getting married and expecting a baby and that he wanted to add them to his medical insurance. Id. He also stated that the baby had a medical condition that may require surgery at birth. Id. David completed the necessary paperwork to change his status to family coverage. Id.

In April 2002, David confirmed with the Human Resources department that he had been switched to family coverage. Complaint, ¶ 15. He later inquired again into his coverage, and again the Human Resources department confirmed that he had family coverage under the Plan. Complaint, ¶ 16. Prior to Samuel's birth, David also called Med Tac, regarding "the procedure that must be followed subsequent to their child's birth." Id., ¶ 17. Med Tac informed him that the hospital would contact it upon Samuel's birth. Id. Plaintiffs do not allege that they enrolled in the Healthy Baby Program during any of these conversations.

On August 10, 2002, Tara gave birth to Samuel. Complaint, ¶ 18. Samuel was then transferred from Brigham & Women's Hospital to Boston Children's Hospital where he underwent emergency surgery. Id. Plaintiffs do not allege that at the time of Samuel's birth, Tara was enrolled in the Healthy Baby Program. Nor do they allege that they obtained prior approval from MAP for either hospital admission or the emergency surgery.

Plaintiffs sought payment from the Plan related to Samuel's birth and surgery. Plaintiffs were advised by Fiona Ritchie, the administrator of the Plan, that their claims for benefits were denied. Complaint, ¶ 19.

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

III.  <u>Plaintiffs' Appeal of the Denial of Benefits.</u>

Plaintiffs appealed the denial of benefits and obtained a hearing before the Trustees.  At the hearing, Plaintiffs were represented by counsel.  <u>Id.</u> at ¶¶ 22-23.  Pursuant to their authority under the Plan and in accordance with the trust fund agreement, the Trustees referred the matter to a neutral arbitrator to serve as a Claim Reviewer.  <u>Id.</u>, ¶ 24.

As alleged in the Complaint, the Arbitrator, Robert M. O'Brien, upheld the denial of benefits.  <u>Id.</u>  A copy of the Arbitrator's award is attached hereto at Exhibit B.  In reaching his decision, the Arbitrator was provided a copy of the written statement submitted by Plaintiffs' attorney to the Trustees.  Ex. B, p. 4.  The Arbitrator found that Plaintiffs had failed to enroll in the Healthy Baby Program and to seek prior approval from MAP for hospital admission.  <u>Id.</u>, pp. 5-6; Complaint, ¶ 24.  According to the Arbitrator, "[t]here can be no question that the Summary Plan Description given to members when they enroll in the . . . Plan clearly, unequivocally and repeatedly advises members that they are required to contact the Trust Office as soon as they or a covered dependent's pregnancy is confirmed and enroll in the Healthy Baby Program."  Ex. B, p. 5.  The arbitrator found that David "never enrolled his wife in the Healthy Baby Program as the Plan required."  <u>Id.</u>

As to the MAP approval requirement, Arbitrator O'Brien found that that requirement "is reiterated <u>four</u> times in the Summary Plan Description."  <u>Id.</u>, p. 6.  He also found that the health plan identification card issued to participants states on its face that "MAP must be contacted at 617-773-4288 prior to any hospital admission."  <u>Id.</u>  While Plaintiffs allege in the Complaint that they did not receive new cards when David changed to family coverage, Complaint, ¶ 16, the Arbitrator found that David earlier had been issued at least one such card and had used that card

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

in the past.  Ex. B, p. 6.  The Arbitrator found that at no time did Plaintiffs comply with the requirement of contacting MAP.  Id.

The Arbitrator held that David had "failed to comply with two mandatory requirements of the Preferred Provider Plan."  Id.  He thus concluded that the Trustees are not responsible "for payment of medical charges incurred for the treatment of Samuel Williams."  Id.  The Arbitrator noted that Plaintiffs' failure to comply with either requirement standing alone made them ineligible for payment.  Id.

On February 19, 2004, Plaintiffs brought suit under ERISA to recover the unpaid medical expenses related to Samuel's birth and surgery.

## ARGUMENT

In their Complaint, Plaintiffs do not challenge the conclusion reached by the Arbitrator that they did not satisfy two mandatory requirements for payment of benefits under the Plan.  Instead, Plaintiffs simply assert that they are nonetheless entitled to the benefits.  The Arbitrator's decision is entitled to deference, and Plaintiffs present no good reason why his decision should be disregarded.  Plaintiffs' additional claims of breach of fiduciary duty and breach of employment duty simply do not state claims for relief under ERISA.  The Complaint should be dismissed in its entirety.

I.  Defendants Are Entitled To Rely Upon the Plan and the Arbitrator's Award.

As a preliminary matter, Defendants may properly rely on the Plan document and the Arbitrator's Award in support of their motion to dismiss pursuant to Rule 12(b)(6).  While those documents are not attached to the Complaint, Plaintiffs refer to and rely upon those documents in their Complaint.  It is well-settled that Defendants may rely upon the documents in their entirety without transforming their motion to dismiss into one for summary judgment.  See, e.g., Clorox

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

Co. Puerto Rico v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000) ("Although much of the evidence contained in the record is out-of-bounds in reviewing a 12(b)(6) dismissal, it is well-established that in reviewing the complaint, we 'may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment'") (citation omitted); Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996) (same). See also Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993); Fudge v. Penthouse Int'l, Ltd., 840 F.2d 1012, 1014-15 (1st Cir. 1988).

II.    Plaintiffs Fail To State A Denial of Benefits Claim.

In Count I of their Complaint, Plaintiffs allege a denial of benefits claim under 29 U.S.C. § 1132(a)(1)(B) of ERISA. That claim must fail as a matter of law because the Arbitrator's conclusion that Plaintiffs had failed to satisfy two mandatory requirements of the Plan is entitled to deference under the Supreme Court's decision in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989). In Firestone, the Supreme Court held that when a denial of benefits is challenged, if the plan vests the administrator with authority "to determine eligibility for benefits or to construe the terms of the plan," then the decisions of the administrator are entitled to deference unless they are "arbitrary or capricious." 489 U.S. at 115. See also Leahy v. Raytheon Co., 315 F.3d 11, 15 (1st Cir. 2002).

Here, the Plan vested the Arbitrator as Claims Reviewer with the discretionary authority to interpret and apply the terms of the Plan and determine Plaintiffs' eligibility for benefits. See Terry v. Bayer Corp., 145 F.3d 28, 37 (1st Cir. 1998) (where the plan vests the administrator with power "to find necessary facts, determine eligibility for benefits, and interpret the terms of the Plan," then Firestone's deferential standard of judicial review is mandatory). As the Plan vested

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

the Arbitrator with authority to determine Plaintiffs' eligibility for benefits, his determination that they had failed to satisfy mandatory requirements for payment is entitled to deference and the Court may reverse that decision only if was arbitrary and capricious.  See Liston v. UNUM Corp. Officer Severance Plan, 330 F.3d 19 (1st Cir. 2003).

Under that standard, the "question is whether the administrator's action on the record before him was unreasonable." Liston, 330 F.3d at 24; see also Cook v. Liberty Life Assurance Co., 320 F.3d 11, 19 (1st Cir. 2003); Lopes v. Metropolitan Life Ins. Co., 332 F.3d 1, 5 (1st Cir. 2003).  Plaintiffs do not allege that the Arbitrator's Award was unreasonable in any way.  Indeed, nowhere in their Complaint do Plaintiffs challenge the Award.

Even if Plaintiffs sought to amend their Complaint to allege that the Award somehow was arbitrary or capricious, the claim should still be dismissed, as there was nothing unreasonable about the Arbitrator's conclusion.  Plaintiffs cannot and do not dispute that the Plan contained two mandatory requirements as a precondition for payment of benefits:  (1) prior approval by MAP for all hospital admissions and (2) enrollment in the Healthy Baby Program as soon as the pregnancy is confirmed.  Nor do Plaintiffs dispute that they never satisfied these requirements.  On these facts, it was reasonable for the Arbitrator to conclude that Plaintiffs were not entitled to the claimed medical benefits.  See Perry v. New England Bus. Serv., Inc., C.A. No. 01-11508-RWZ, 2002 U.S. Dist. LEXIS 20192, at *3 (D. Mass. Oct. 22, 2002) (granting motion to dismiss on claim of denial of benefits because plaintiff was ineligible under terms of the plan), aff'd, 347 F.3d 343 (1st Cir. 2003).

While not clearly articulated in the Complaint, Plaintiffs may contend that the Defendants should be estopped from enforcing these mandatory requirements because David had contacted Med Tac to inquire about the procedures that needed to be followed subsequent to Samuel's

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

birth. Here too the Arbitrator's conclusion is entitled to deference. Notwithstanding any alleged conversation with Med Tac, the Arbitrator found that David had never contacted MAP, the entity he was obligated to contact in the first instance.[1] As the Arbitrator was charged under the Plan to interpret and apply its terms, his conclusion in this respect cannot be viewed as unreasonable.

Moreover, the Arbitrator's conclusion is consistent with the relevant case law. In <u>Law v. Ernst & Young</u>, 956 F.2d 364 (1st Cir. 1992), the First Circuit addressed under what circumstances an ERISA plan participant can seek to enforce an oral representation. The Court explained that the recovery of benefits based upon an oral representation was limited to instances where the alleged oral representation constituted an *interpretation* of language of an ERISA plan and expressly rejected a claim where the plaintiff sought to use the oral representation as a *modification* of the terms of the plan. <u>Id.</u> at 369-70. Here, Plaintiffs' claim appears to be that in conversations with the Human Resources Department and Med Tac, they were never informed about the requirements and thus cannot be bound by them. Such alleged omissions would amount to a modification of the Plan, a result prohibited by <u>Law</u>.

### III. Plaintiffs' Claim of Breach of Fiduciary Duty Is Not Cognizable.

In Count II of their Complaint, Plaintiffs assert that "[i]n denying medical benefits," Defendants breached their fiduciary duties to them in violation of 29 U.S.C. § 1132.[2] Complaint, ¶¶ 33-38. In their Prayer for Relief, they seek to recover the medical benefits allegedly due under the Plan.

---

[1] Plaintiffs concede that David called Med Tac to learn about the procedures "<u>subsequent</u>" to the birth and hospital admission and was not seeking approval for the hospital admission. Complaint, ¶ 17.

[2] Plaintiffs attempt to style their denial of benefits claim as one for breach of fiduciary duty by alleging that Defendants "misused and/or misappropriated" funds of the Plan. Complaint, ¶ 35. However, Plaintiffs do not allege (nor could they) that any of the Defendants converted assets of the Plan for their own use. Instead, as the Complaint makes clear, Plaintiffs simply allege that Defendants "in denying medical benefits to all Plaintiffs" engaged in such conduct. Thus, the essence of their claim is that Defendants unlawfully denied them benefits under the Plan.

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

This is not a claim of breach of fiduciary duty under ERISA.  Section 1132(a)(2) provides that a plan participant, among others, may bring an action for appropriate relief under section 1109 of ERISA.  See 29 U.S.C. § 1132(a)(2).  Section 1109(a) provides in pertinent part that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . ."  29 U.S.C. § 1109(a).

In light of this statutory language, the Supreme Court has made clear that a plan participant cannot bring a claim for damages on his own behalf under Section 1132(a)(2).  In Massachusetts Mutual Life Insurance Company v. Russell, 473 U.S. 134 (1985), the Supreme Court held that recovery under that provision is limited to recovery to the plan as a whole and does not permit a beneficiary to assert an individual claim for damages.  See 473 U.S. at 142-44.  See also Watson v. Deaconess Waltham Hosp., 298 F.3d 102, 109 (1st Cir. 2002) (explaining that a fiduciary is liable to a plan for violating Section 1109, but not to an individual plan participant); Larocca v. Borden, Inc., 276 F.3d 22, 28 n.6 (1st Cir. 2002) (explaining that plaintiffs could not seek damages for breach of fiduciary duties, as such damages are precluded by Massachusetts Mut. Life Ins. Co. v. Russell); Drinkwater v. Metropolitan Life Ins. Co., 846 F.2d 821, 824-25 (1st Cir. 1988) ("In *Russell*, the [Supreme] Court concluded that Congress had created liability for breach of fiduciary duty only in favor of the *plan*, and *not* in favor of individual beneficiaries."); Jackson v. Truck Drivers' Union Local 42 Health and Welfare Fund, 933 F.Supp. 1124, 1135 (D. Mass. 1996) ("ERISA does not permit beneficiaries to bring damage actions against fiduciaries on their own behalf").  Thus, while Plaintiffs seek to recover damages

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

consisting of medical expenses related to Samuel's birth and emergency surgery, these simply are not recoverable under a claim for breach of fiduciary duty.

While the Supreme Court recognized in Varity Corp. v. Howe, 516 U.S. 489 (1996) that a participant could bring a claim for individual relief for breach of fiduciary duty under 29 U.S.C. § 1132 (a)(3), ERISA's "catchall" provision, remedies under that section are limited to traditional "equitable" remedies, not legal damages. See Mertens v. Hewitt Assocs., 508 U.S. 248, 256-58 (1993). To the extent that Plaintiffs seek to characterize their request for payment of Samuel's medical expenses as a claim for restitution, that claim also fails. In Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002), the Supreme Court held that a claim of restitution consisting of money allegedly past due under a contract was not typically available in equity and therefore cannot be brought under ERISA's catch-all provision. Id. at 209-11. Thus, Plaintiffs are not entitled to bring a claim of fiduciary duty under the guise of restitution to recover benefits under the Plan. See, e.g., Samson v. Rubin, C.A. No. 00-10215-DPW, 2002 U.S. Dist. LEXIS 20877, at *16 (D. Mass. Oct. 29, 2002) (granting summary judgment for defendants on plaintiff's breach of fiduciary duty claim where claim "at bottom" is to recover long-term disability benefits, relief "outside the scope of equitable remedies envisioned by § 1132(a)(3)").

Even if Plaintiffs properly asserted a claim for equitable relief, the claim should nonetheless be dismissed because a claim under the "catch all" provision is limited to where Plaintiffs have no other avenue for relief under ERISA for the alleged injury. See Varity, 516 U.S. at 498, 506, 515. Plaintiffs can and do assert a claim for denial of benefits under § 1132(a)(1)(B). While Defendants submit that that claim fails as a matter of law because

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

Plaintiffs failed to comply with mandatory requirements of the Plan, Plaintiffs cannot circumvent their failure by reforming their denial of benefits claim as one for breach of fiduciary duty.

IV.     Plaintiffs' Claim for Breach of Employment Duty Fails As Matter Of Law.

In Count III, Plaintiffs assert a claim for breach of employment duty, claiming that Defendant failed to provide them with information and insurance cards, explaining their rights and obligations under the Plan. Complaint, ¶¶ 40-43. Such a claim must fail, as there is no such claim for relief under ERISA. As the Supreme Court has made clear, ERISA is a "'comprehensive and reticulated statute'" that only provides for those remedies expressly authorized by Congress. Great-West Life & Annuity, 534 U.S. at 209 (citing Mertens, 508 U.S. at 251).

To the extent that Plaintiffs are bringing a state law claim, that claim is preempted by ERISA. ERISA preempts any and all state law claims "insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144; see also McMahon v. Digital Equip. Corp., 162 F.3d 28, 36 (1st Cir. 1998). A state law cause of action is "expressly preempted by ERISA where a plaintiff, in order to prevail, must prove the existence of, or specific terms of, an ERISA plan." See id. at 38 (citing Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 140 (1990)). There is no dispute that the Plan is an ERISA-governed plan. Plaintiffs' claim is essentially one to recover "the benefits which they are entitled under the Plan." Complaint, ¶ 43. As such, it squarely falls within the scope of ERISA preemption. See Turner v. Fallon Community Health Plan, Inc., 127 F.3d 196, 199 (1st Cir. 1997) ("[i]t would be difficult to think of a state law that 'relates' more closely to an employee benefit plan than one that affords remedies for the breach of obligations under that plan").

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

V.   Plaintiffs' Claims Against the Colonnade, HCVM and Med Tac Should Be Dismissed.

Finally, even if any of Plaintiffs' claims against the Trustees should survive dismissal, the claims against the Colonnade, Med Tac and HCVM should nonetheless be dismissed.  The heart of Plaintiffs' case is to recover benefits under the Plan, and they concede in the Complaint that "[t]he Trustees have sole responsibility and liability for payment of benefits under the Plan." Complaint, ¶ 1.  Plaintiffs do not allege an independent basis for recovery against the Colonnade, Med Tac or HCVM, and, thus, the claims against those Defendants should be dismissed.

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

## CONCLUSION

For these reasons, Defendants respectfully request that the Court dismiss the Complaint with prejudice and grant such other and further relief as the Court deems just and proper.

> GREATER BOSTON HOTEL EMPLOYEES, LOCAL 26 HEALTH AND WELFARE TRUST FUND BOARD OF TRUSTEES, HEALTHCARE VALUE MANAGEMENT, and MED TAC CORPORATION,
>
> By their attorneys,
>
> s/ Robert A. Fisher
> Jeffrey H. Lerer, BBO #294500
> Robert A. Fisher, BBO # 643797
> Foley Hoag LLP
> 155 Seaport Boulevard
> Boston, MA 02210
> (617) 832-1000
>
> Domenic Bozzotto
> Law Office of Domenic Bozzotto P.C.
> 55 Berkeley Street, 2nd Floor
> Boston, MA  02116
> (617) 423-3335
>
> COLONNADE HOTEL
>
> By its attorneys,
>
> s/ Robert A. Fisher
> Jeffrey H. Lerer, BBO #294500
> Robert A. Fisher, BBO # 643797
> Foley Hoag LLP
> 155 Seaport Boulevard
> Boston, MA 02210
> (617) 832-1000

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

- 16 -

## CERTIFICATE OF SERVICE

    I, Robert A. Fisher, hereby certify that on May 28, 2004 I caused to be served by U.S. mail, postage prepaid, a true and correct copy of the foregoing document upon counsel of record for each other party in this matter.

                                s/ Robert A. Fisher

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com