UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAMUEL WILLIAMS, PPA DAVID WILLIAMS, DAVID WILLIAMS and TARA WILLIAMS,<br><br>Plaintiffs<br><br>vs.<br><br>GREATER BOSTON HOTEL EMPLOYEES, LOCAL 26 HEALTH AND WELFARE TRUST FUNDS BOARD OF TRUSTEES, THE COLONNADE HOTEL, HEALTHCARE VALUE MANAGEMENT, INC., and MED TAC CORPORATION<br><br>Defendants | Civil Action No.<br>04-CV-10338 WGY |

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FILED BY DEFENDANTS, GREATER BOSTON HOTEL EMPLOYEES, LOCAL 26 HEALTH AND WELFARE TRUST FUNDS BOARD OF TRUSTEES, THE COLONADE HOTEL, HEALTH CARE VALUE MANAGEMENT, INC., AND MED TAC CORP., AND MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

Now come the Plaintiffs and file their Opposition to the Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed by the Defendants Greater Boston Hotel Employees, Local 26 Health and Welfare Trust Funds Board of Trustees ("Trustees"), the Colonnade Hotel ("Colonnade"), Health Care Value Management, Inc., ("HCVM") and Med Tac Corp. ("Med Tac") (collectively "Defendants"). At the same time, and as part of their Opposition, Plaintiffs also file their Motion for Leave to File the Amended Complaint that is attached hereto as Exhibit "A".

1

## FACTS

On or about April 8, 1998, David Williams was hired by the Colonnade Hotel as a server in Brasserie Joe's Restaurant. At the time he enrolled in the Plan as a single member. Complaint, ¶ 10. In December of 2001, David and Tara Williams (not yet married) discovered that they were expecting a child. At this time, David Williams only maintained health coverage for himself. Complaint, ¶ 11.

In February of 2002, it was discovered, via ultrasound, that David and Tara Williams' child was suffering from a potentially life threatening disease called gastroschesis. Tara Williams' pregnancy was classified as high risk and they were advised that it was likely that their child would require surgery immediately upon his birth. Complaint, ¶ 12. Shortly after discovering Samuel's birth defect, David Williams contacted the Human Resources Department in an effort to find out what he needed to do to switch his health care policy from a single status to a family plan coverage. He informed human resources that he would be getting married in April and was, likewise, expecting a child and wished to put both Tara Williams and the baby on his health insurance. He also alerted them that his unborn child had a congenital birth defect that was going to require extensive medical attention and potentially surgery upon his birth. At this time, he completed the necessary paperwork and was assured by Human Resources that it was all taken care of. Complaint, ¶ 13.

Copies of David Williams' Earning Statements for the pay periods of March 16, 2002 through March 22, 2002 and March 23, 2002 through March 29, 2002 indicate the change in David William status from a single insurance policy holder to a family plan policy holder. The

documents indicate that at this time, money was being taken out of David Williams' check to pay for the family plan coverage. Complaint, ¶ 14.

In April, shortly after David and Tara Williams were married, Mr. Williams again contacted the Human Resources Department to confirm that he had been switched to the family plan and to assure that the coverage they needed for Samuel was in place. Again Human Resources advised them that it was taken care of. Complaint, ¶ 15. Though money continued to be taken out David Williams' check for the family care coverage, David Williams and Tara Williams never received any new insurance cards, information or any health care/policy handbook explaining their insurance coverage, health care benefits or what was required by them in order to comply with the Plan's policies and procedures. As such, David Williams again went to the Human Resource department to inquire as to his coverage and was again assured that his family was fully covered. Likewise, they advised David Williams and Tara Williams to use their social security numbers for purposes of insurance identifications in light of the fact that they had not received health insurance cards. Complaint, ¶ 16.

Shortly before Tara Williams gave birth to their son, David Williams contacted a representative from MED TAC to inquire as to the procedure that must be followed subsequent to their child's birth. He was advised that the hospital would be responsible for contacting them and advising them as to Samuel's birth. Complaint, ¶ 17. On August 10, 2002, Tara Williams gave birth to Samuel Williams. Samuel required immediate emergency surgery to treat the gastroschesis. He was transferred from Brigham & Woman's Hospital to Boston Children's Hospital where he underwent the required surgery, which was successful. Complaint, ¶ 18.

Since the time of Samuel's birth David and Tara Williams have submitted numerous bills to the Plan to be paid but have been denied. They were advised that their claims were denied

based on the fact that Tara Williams did not participate in the "Healthy Baby Program" as required for pregnant woman under the Plan and that David Williams and Tara Williams did not notify the Plan that Samuel had been born. Complaint, ¶ 19.

Upon receiving notification of denial of benefits under the Plan, David and Tara Williams timely filed their first appeal which was subsequently denied. On or about April 7, 2003, David and Tara Williams filed their second appeal and requested that a hearing be scheduled in compliance with the Plan's policy regarding appeals for claim denials. Complaint, ¶ 20. On September 5, 2003, the Plaintiff's were advised by Fiona Ritchie, Administrator for the Greater Boston Hotel Employees/Local 26 Trust Funds, that the Plan Trustees were considering their request for a hearing. Likewise, enclosed with this correspondence was a copy of the Greater Boston Hotel Employees/Local 26 Benefits Book describing Health and Welfare benefits available to Plan participants. Complaint, ¶ 21.

On October 1, 2003, the Plaintiffs were advised by Fiona Ritchie, Administrator for the Greater Boston Hotel Employees/Local 26 Trust Funds, that the Plan Trustees had granted their request for a hearing relative to the denial of medical claims for Samuel Williams. Complaint, ¶ 22. On October 8, 2003, the Plaintiffs appeared before the Board of Trustees for Greater Boston Hotel Employees/Local 26 Trust Funds, with Counsel, to appeal the denial of medical benefits for Samuel Williams following his birth. Complaint, ¶ 23. On December 5, 2003, the Plaintiffs were advised by Fiona Ritchie, Administrator for the Greater Boston Hotel Employees/Local 26 Trust Funds, that the Plan Trustees, in accordance with Greater Boston Hotel Employee Health & Welfare Trust Fund Agreement § 4.15, had engaged an arbitrator to render a decision relative to the denial of medical benefits for Samuel Williams. The Arbitrator found, as set out in his written decision, that the Trustees should not pay the medical bills submitted to MED TAC for

4

Samuel William's hospitalization from August 10, 2002 through September 17, 2002 due to the fact that Tara Williams did not participate in the Healthy Baby Program and that there was no prior approval for Samuel's hospital admission. Complaint, ¶ 24.

Due to the unlawful and arbitrary denial of benefits under ERISA, the Plaintiffs have been faced with great financial loss due to the medical bills accumulated while Samuel Williams was hospitalized after his birth. Complaint, ¶ 25.

The Plaintiff's filed suit in the United States District Court for the District of Massachusetts alleging that Defendant's failure to provide benefits to Plaintiffs under the terms of the plan for the period beginning on August 10, 2002 and continuing through September 17, 2002 is in violation of ERISA, 29 U.S.C. §1001 *et seq.*Complaint, ¶ 27. Additionally, that the the Defendant's actions in denying medical benefits to Samuel Williams covered by the Plan constitute an unlawful denial of benefits under 29 U.S.C. § 1132(a)(1)(B) of ERISA. Complaint, ¶ 28. The Plaintiff's also argue that the Defendants have a fiduciary duty in administering the funds of the aforementioned plan, Complaint, ¶ 34, and that in denying medical benefits to the Plaintiffs who are beneficiaries and covered by the Plan, the Defendants unlawfully misused and/or misappropriated the aforementioned funds. Complaint, ¶ 35.

## LEGAL STANDARD

In considering a Motion to Dismiss, a Court must take the allegations in the Complaint as true and must make all reasonable inferences in favor of the Plaintiffs. Watterson v. Page, 987 F.2d at 2 (1st Cir. 1993). A Court will affirm the dismissal of a Complaint, if, and only if, accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of the Plaintiff, the Complaint fails to state a claim upon which relief can be granted. Clorox Company

Puerto Rico v. Proctor & Gamble Commercial Company, 228 F.3d at 30 *citing* Fed.R.Civ.P. 12(b)(6). The Complaint is properly dismissed only when the allegations are such that the Plaintiff can prove no set of facts to support the claim for relief. Id. at 30 *citing* Rockwell v. Cape Cod Hosp., 26 F.3d 254, 260 (1st cir. 1994).

I.  **ARGUMENT**

A.  **Plaintiffs have pled sufficient facts to set forth a claim of violation of ERISA against the Defendant Trustees as, in light of the facts, the Arbitrators decision was arbitrary, capricious and unreasonable.**

The Defendants argue that the Plaintiff's allegations contained in Count I of their Complaint must fail as a matter of law because the Arbitrator's decision is entitled to deference and the Plaintiffs did not articulate in their complaint that the decision rendered was arbitrary or capricious. Additionally, the Defendants argue that the Plaintiffs improperly named Defendants, Colonnade, HCVM and Med Tac as parties to the action.

The United States Supreme Court held in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989) that where the plan vests the administrator with authority to determine eligibility for benefits or to construe the terms of the plan then the decisions of the administrator are entitled to deference unless arbitrary or capricious. The arbitrary and capricious standard asks only whether a factfinder's decision is plausible in the light of the record as a whole. Leahy v. Raytheon Company Co., 315 F.3d at 17, (1st Cir. 2002). See also Pari-Fasano v. ITT Hartford Life & Accid. Ins. Co., 230 F.3d 415, 419 (1st Cir. 2000). The ordinary question is whether the

6

Administrator's action on the record before him was unreasonable. Liston v. Unum Corporation Officer Severance Plan, 330 F.3d at 24 (1st Cir. 2003). See also, Cook v. Liberty Life Assurance Co., 320 F.3d 11, 19 (1st Cir. 2003), Lopes v. Metropolitan Life Ins. Co., 332 F.3d 1, 5(1st Cir. 2003).

The Plaintiffs concede that the Defendant Trustees have sole responsibility for payment of benefits under the Plan. Likewise, while the Plaintiffs did not clearly articulate in their Complaint that the arbitrator's decision was arbitrary or capricious, to the extent the Complaint is defective in stating a cause of action against the defendants, the Plaintiffs move to remedy this defect by filing the Amended Complaint which is attached hereto as Exhibit "A".

The Arbitrator's decision in upholding the denial of medical benefits for Samuel Williams is unreasonable in light of the facts surrounding the present case. In particular, the arbitrator's failure to give proper weight to the fact that David Williams and Tara Williams never issued any health insurance cards, information or any health care/policy handbook explaining their insurance coverage, health care benefits or what was required by them in order to comply with the Plan's policies and procedures, was unreasonable. Likewise, it was unreasonable of the Arbitrator to fail to give proper weight to the Williams' timely diligence in maintaining frequent communications with Human Resources seeking advisement as to what they were required to do to comply with the requirements of the Plan. The Arbitrator's decision notes only that the Plaintiffs failed to satisfy two mandatory requirements under Plan, even though the Plaintiffs had no knowledge and received no notice that these requirements existed. Additionally, the Defendant's argument and the Arbitrator's finding that David had been issued at least one health insurance card is irrelevant. The fact remains, and the Defendant's have not disputed, that the Plaintiffs, upon switching from single plan status to family plan status, were not issued any

benefits book explaining what their rights and/or obligations were under the Plan. As such, the Plaintiffs were unaware that they were required to take part in the Healthy Baby Program in order to receive any payment of benefits. Indeed, Plaintiffs were not aware such a program existed. They were never advised of this program during any of their numerous conversations with Human Resources and Med Tac.

Lastly, because David Williams and Tara Williams knew from the beginning that their child had a genetic disease that would require immediate medical attention, both mother and child received the highest care possible from her treating physicians in Boston. Additionally, assuming the purpose of the Plan's required participation in the Healthy Baby Program is to promote the wellness of both mother and child and see that both parent and child receive the best care possible, participating in this program would not have changed the outcome of Samuel's birth and subsequent medical problems. Samuel's condition was genetic and could not be prevented. Further, Tara Williams *was* receiving the best care possible.

In the light of the foregoing facts and circumstances, the arbitrator's decision to uphold the denial of medical benefits for Samuel Williams was arbitrary, capricious and unreasonable.

### B.    Plaintiffs have pled sufficient facts to set forth a claim of Breach of Fiduciary Duty against the Defendant Trustees.

The Defendants argue in their Motion to Dismiss that the Plaintiff's Claim for Breach of Fiduciary Duty is not cognizable as their Prayer for Relief seeks to recover the medical benefits they were denied. To the extent the Complaint is defective in stating a cause of action against the

Defendant Trustees, the Plaintiffs move to remedy this defect by filing the Amended Complaint which is attached hereto as Exhibit "B".

Section 1132 (a)(3) under ERISA states, a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the Plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." In <u>Varity Corp. v. Howe</u>, 516 U.S. 489 (1996) the Supreme Court held that a participant could bring a claim for individual relief for breach of fiduciary duty under 29 U.S.C. § 1132 (a)(c). As to the relief available: injunction, mandamus and restitution are categories of relief typically available in equity. <u>Mertens v. Hewitt Assocs.</u>, 508 U.S. at 256 (1993). For restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the Plaintiff particular funds or property in the Defendant's possession. <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>, 534 U.S. at 214 (2002).

In the present case, the Defendant's Plan is an employee benefit plan as is contemplated by the Employment Retirement Income Security Act of 1974 (ERISA), to wit, 29 U.S.C. Section 1132. The Defendants have a fiduciary duty in administering the funds of the aforementioned plan. The Plaintiff David Williams' wages, once they are withdrawn from his pay, become assets of the aforementioned plan. In arbitrarily denying medical benefits to the Plaintiffs who are beneficiaries and covered by the Plan, the Defendants unlawfully misused and/or misappropriated the money that was regularly being withdrawn from David Williams' check. The Plaintiffs are entitled to restitution and to have the funds that were withdrawn, and presently in the possession of the Defendant, restored to them. Additionally, the Defendants had a fiduciary duty to see that the Plaintiffs were issued the necessary benefits handbook and health

insurance cards that would give them notice as to what was required of them to receive payment of medical benefits. In failing to do so, the Plaintiffs had no knowledge that they were required to participate in the Healthy Baby Program. As a result of the Defendant's breach of their fiduciary duty, the Plaintiffs have been faced with financial ruin.

## II.     Motion for Leave to Amend and to File Amended Complaint

Plaintiffs move, pursuant to Fed. R. Civ. P. 15(a), for leave to amend the Complaint by filing the Amended Complaint which is attached hereto as Exhibit "A".

Leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), and dismissal under Rule 12(b)(6) without permitting the plaintiffs leave to amend is "inconsistent with the spirit of the Federal Rules." Foman v. Davis, 371 U.S. 178, 182 (1962):

> Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded.  See generally, 3 Moore, Federal Practice (2d ed. 1948), 15.08, 15.10.  If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. - the leave sought should, as the rules require, be 'freely given.'  Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

In this case, there has been no undue delay in seeking leave to amend, nor has there been any previously allowed motion to amend by the Court.

For all these reasons, Plaintiffs move that this Honorable Court should allow the Plaintiffs' Motion for Leave to File Amended Complaint.

10

## CONCLUSION

For the reasons stated above, Plaintiffs ask this Honorable Court to deny the Defendant's Motion to Dismiss. Additionally, Plaintiffs ask that they be given leave to amend the Complaint so as to cure any defect in the pleadings which this Court finds, and to that end, they ask that the Court accept the Amended Complaint for filing, which is hereto attached.

                                      Respectfully Submitted,
                                      PLAINTIFFS,
                                      By their Attorney,

                                      */s/ Stefani M. Field*
                                      Stefani M. Field, Esq.
                                      Gold, Albanese, Barletti & Velazquez
                                      50 Congress Street-Suite 225
                                      Boston, MA 02109
                                      617-723-5118
                                      BBO#656442

DATED: 6/15/04