UNITED STATES DISTRICT COURT
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAMUEL WILLIAMS, PPA DAVID WILLIAMS, DAVID WILLIAMS and TARA WILLIAMS, <br><br> Plaintiffs, <br><br> v. <br><br> GREATER BOSTON HOTEL EMPLOYEES, LOCAL 26/HEALTH AND WELFARE TRUST FUNDS BOARD OF TRUSTEES, <br><br> Defendant. | CIVIL ACTION No. 04 CV 10338 (JLA) |

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AND MEMORANDUM OF LAW
IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 and Local Rule 56.1, Defendant Greater Boston Hotel Employees,

Local 26 Health and Welfare Trust Funds Board of Trustees ("Trustees") hereby opposes

Plaintiffs' Motion for Summary Judgment and also submits this memorandum in support of its

cross-motion for summary judgment on the Amended Complaint of Plaintiffs Samuel Williams

("Samuel"), David Williams ("David") and Tara Williams ("Tara") (collectively "Plaintiffs").

INTRODUCTION

Pursuant to the Agreement of Trust, the Trustees submitted Plaintiffs' claim for benefits

under the Preferred Provider Plan to a neutral arbitrator. After reviewing the record evidence,

including written submissions from Plaintiffs' counsel, the neutral arbitrator determined that

Plaintiffs failed to comply with two independent prerequisites to payment under the plan: (1)

enrollment in the Healthy Baby Program upon learning of Tara's pregnancy and (2) contacting

Modern Assistance Programs ("MAP") prior to any hospital admission related to Samuel's birth

and surgery. Based on these findings, the arbitrator concluded that Plaintiffs were not eligible

for payment under the Plan for medical expenses incurred for Samuel's hospitalization from August 10, 2002 through September 17, 2002.

In seeking judicial review of this determination, Plaintiffs concede in their motion that the neutral arbitrator's conclusions are entitled to deference, absent a showing that his decision was arbitrary and capricious. Plaintiffs cannot meet that standard, as they cannot and do not dispute that they neither enrolled in the Healthy Baby Program nor satisfied the MAP pre-admission requirement. Instead, the gist of Plaintiffs' motion is that the arbitrator should have disregarded the express language of the Plan and excepted them from these requirements. Based on the administrative record before him, the arbitrator concluded that there was no basis for doing so, and that conclusion is reasonable and entitled to deference.

Plaintiffs' motion for summary judgment should be denied, and the Trustees' cross motion for summary judgment should be granted.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

The following statement of undisputed facts is based upon the evidence presented to the neutral arbitrator below.[1]

I.    The Preferred Provider Plan.

The Trustees have established a multiemployer welfare benefit plan called the Preferred Provider Plan ("Plan"). Amended Complaint, ¶ 1; Ex. 4 to Plaintiffs' Motion. The purpose of the Plan is to provide for the payment or reimbursement of medical expenses incurred by eligible employees of various hotels in the greater Boston area and their covered dependents. Id., ¶ PD-1.1. The benefits provided under the Plan are self-funded by the Trust administered by the Trustees. Id., Summary Plan Description. A company called MED TAC Corporation ("MED

---

[1]  The parties have stipulated as to what information was provided to the arbitrator. See Stipulation, attached as Exhibit A to the Affidavit of Robert A. Fisher ("Fisher Aff."), filed herewith.

TAC") is the administrator of the Plan.  Id., General Information.  However, the Trustees are solely responsible for payment of benefits under the Plan.  Id., Summary Plan Description.

For medical services relating to maternity care and childbirth, the Plan contains two mandatory preconditions for the payment of benefits:  (1) approval by Modern Assistance Programs ("MAP") for all hospital admissions and (2) enrollment in the Healthy Baby Program. Both requirements are set forth in a section in the Plan entitled CONDITIONS OF PAYMENT, which states in relevant part:

> **SPECIFICALLY, MODERN ASSISTANCE PROGRAMS, INC. (MAP) IS A UTLIZATION REVIEW AND CASE MANAGEMENT ORGANIZATION THAT MUST BE CONTACTED FOR APPROVAL OF CERTAIN SERVICES IN ACCORDANCE WITH THE SCHEDULE OF MEDICAL BENEFITS, INCLUDING ALL HOSPITAL ADMISSIONS. . . . IF MAP DOES NOT APPROVE SUCH SERVICES AS REQUIRED, THEN NO BENEFITS ARE PAYABLE FOR THESE SERVICES.  IN ADDITION, PREGNANT WOMEN MUST CONTACT THE TRUST OFFICE AND ENROLL IN THE HEALTHY BABY PROGRAM.  IF THE TRUST OFFICE IS NOT CONTACTED AS REQUIRED FOR MATERNITY AND NEWBORN BABY CARE SERVICES, THEN NO BENEFITS ARE PAYABLE FOR THESE SERVICES.**

Ex. 4 to Plaintiffs' Motion, Summary Plan Description, §1.2.

The Plan reiterates both requirements in several other sections.  First, in the Schedule of Medical Benefits, the Plan states that "**MAP is a utilization review and case management organization that must be contacted for approval of certain services as indicated below, including ALL Hospital admissions.**"  Id., § 2.1.  In a chart describing coverage for types of services, the Plan states that prior MAP approval is required for all inpatient surgery, and if approval is not obtained, "NO benefits are payable for these services."  Id.  Finally, in the General Exclusions section, the Plan states that no benefits shall be paid with respect to "Charges for any services provided to a Covered Person without prior approval from MODERN

ASSISTANCE PROGRAMS, INC. (MAP) when such services require MAP prior approval, as indicated in the Schedule of Medical Benefits." Id., § 6.1 (20).

As to the Healthy Baby Program, the Schedule of Medical Benefits section states that **"Pregnant women must contact the Trust Office and enroll in the Healthy Baby Program as soon as the Physician confirms pregnancy"** and if the participant fails to do so, **"then NO benefits are payable for these services."** Id., § 2.1. The chart setting forth covered services states that coverage for inpatient maternity care and newborn baby care is dependent upon prior approval and enrollment in the Health Baby Program. Id. Finally, the General Exclusions section of the Plan states that benefits will not be paid for "Charges for Newborn Baby Care and Maternity Care provided to a Covered Person who has not enrolled in the Healthy Baby Program as required in accordance with the Schedule of Medical Benefits." Id., § 6.1(21).

The Plan sets forth a process by which a participant may appeal a denial of benefits. In support of any such appeal, the participant may submit "written comments, documents, records or other information," and the review of the appeal shall include all such submitted information. Id., § 7.4. The Trustees have authority under the Plan to appoint an individual or committee to serve as "Claims Reviewer." Id. The Plan states that the Claims Reviewer:

> shall have discretionary authority to interpret and apply the terms of the Plan to specific claims on a consistent basis for all similarly situated Claimants. The decision of the Claims Reviewer in this review will be final and binding upon MED TAC, the Trustees and all Claimants under the Plan.

Id. Pursuant to the Agreement of Trust, if the Trustees are deadlocked regarding an issue, they are required to submit the matter to arbitration before an impartial arbitrator and "the decision of the arbitrator shall be binding upon all parties." Fisher Aff., Ex. B, § 4.15.

II.    David's MED TAC Insurance Card.

On or about April 8, 1998, David was hired by the Colonnade Hotel ("Hotel") as a server in its restaurant. He enrolled in the Plan as a single member, and his coverage became effective on July 7, 1998. See Plaintiffs' Statement of Facts ("Plaintiffs' SOF"), ¶1; Amended Complaint, 7; Answer, ¶ 7; Fisher Aff., Ex. C. The Trustees' practice has been to send insurance cards and a summary of medical benefits to the address on file for the employee by his effective date of coverage. Id. There is no evidence in the administrative record that David did not receive this information at this time.

On or about December 17, 1999, the Trustees mailed to each participant in the Plan a summary of medical benefits, effective January 1, 2000. Fisher Aff., Ex. C & D. The mailing included a section on its first page entitled, Cost Containment Programs which stated:

> Modern Assistance Programs, Inc. (MAP) is a utilization review and case management organization that must be contacted for approval of certain services including all Hospital admissions . . . . In addition, pregnant women must contact the Trust office and enroll in the Healthy Baby Program. If the Trust office is not contacted as required for Maternity and Newborn Baby Care Services, then NO benefits are payable for such services.

Fisher Aff., Ex. D. These requirements are reiterated on page 3 of the mailing, under the heading "Maternity Care." Id.

Between that mailing and February 2000, new MED TAC insurance cards were mailed to each participant. Fisher Aff., Ex. C & E. The card stated on its face "CONTACT MAP AT 617-773-4288 PRIOR TO HOSP. ADMIT . . ." Fisher Aff., Ex. F. There is no evidence in the administrative record that David did not receive the mailing or his new MED TAC insurance card. In fact, David had used his MED TAC insurance card, including complying with the MAP requirement. Fisher Aff., Ex. C.

III.    Tara's Pregnancy, Marriage to David and Samuel's Birth.

In December 2001, David and Tara (not yet married) learned that they were expecting a baby. Plaintiffs' SOF, ¶ 11. There is no evidence in the administrative record that Plaintiffs enrolled in the Healthy Baby Program at that time.

In February 2002, David and Tara learned that the baby (Samuel) may have a disease called gastroschesis and may require surgery upon birth. Plaintiffs' SOF, ¶ 3.

Thereafter, David contacted the Human Resources department at the Hotel about changing his insurance status. Plaintiffs' SOF, ¶ 4. While Plaintiffs claim in their Statement of Facts that David changed to "family" status, this is inaccurate. Id., ¶¶ 4 &5. On March 21, 2002, David filled out a form to add Tara to his insurance as of the date of their marriage in April. Fisher Aff., Ex. G & H. In April 2002, the Hotel began withholding contributions from David's pay at the "single plus one" rate of $27 per week.[2] Fisher Aff., Ex. C.

In July 2002, David contacted MED TAC regarding his coverage. While he could not remember the name of the representative, he did call the number for MED TAC located on his insurance card. Fisher Aff., Ex. I.

On August 10, 2002, Tara gave birth to Samuel. Amended Complaint, ¶ 18; Answer, ¶ 18; Plaintiffs' SOF, ¶ 19. Samuel was then transferred from Brigham & Women's Hospital to Boston Children's Hospital where he underwent surgery. Id. There is no evidence that Plaintiffs obtained prior approval from MAP for either hospital admission.

Within one week of Samuel's birth, Ana Petrovich, Director of Human Resources of the Hotel, reminded David that he needed to enroll the baby under the Plan for coverage. David stated that he knew he had to do so. Fisher Aff. Ex. H. On September 17, 2002, David filled out

---

[2]    While Plaintiffs claim that they did not receive an additional MED TAC card or summary of benefits for Tara at this time, dependants do not receive unique MED TAC cards. Fisher Aff., Ex. C.

paperwork to add Samuel as a covered dependent under the Plan.  Fisher Aff., Ex. J.  David later

told the Human Resources offices of the Hotel that he had not previously enrolled Samuel

because he and Tara had two types of insurance and had not decided which they were going to

use.[3]  Fisher Aff. Ex. H.  Apparently, Tara had insurance through Harvard Pilgrim and had been

admitted to the hospital under that insurance.  Fisher Aff., Ex. K.

On November 8, 2002, a representative from MAP left a message for Tara, and Tara

returned that call.  Fisher Aff., Ex. K.  The case notes of that telephone conversation state the

following:

> . . . Mom was on Harvard Pilgrim throughout the pregnancy.  She has that
> insurance through her ex-husband until the end of 2002.  Claims her husband
> signed up for family coverage when she was six months pregnant.  Doesn't think
> Harvard Pilgrim will cover any tx for the baby because child is not dependent of
> ex-husband.  She believes child was admitted to Children's under the assumption
> that he was covered by Harvard Pilgrim.  She will try to contact Children's and
> Harvard Pilgrim and see what she can find out. . . .

Fisher Aff., Ex. K.

IV.    Plaintiffs' Claim For Benefits and Appeals.

Plaintiffs sought payment from the Plan for expenses related to Samuel's birth and

surgery.  Amended Complaint, ¶ 16; Answer, ¶ 16; Plaintiffs' SOF, ¶ 21.  MED TAC denied

payment of the benefits, because Tara had not enrolled in the Healthy Baby Program and MAP

had not been contacted prior to any hospital admission.  Amended Complaint, ¶ 16; Answer, ¶

16; Plaintiffs' SOF, ¶ 20, Fisher Aff., Ex. C.

On December 12, 2002, David called Fiona Ritchie ("Ritchie"), the administrator in the

Trust Office, and Ritchie explained MED TAC's reasons for denying the claim.  Fisher Aff., Ex.

---

[3] Because the Plan has a clause which requires newborns to be enrolled within 30 days of birth, Jennifer Ackerly, an employee in the Human Resources department at the Hotel, submitted a letter to the Trust office stating that due to a clerical error, Samuel's coverage should have been effective as of the date of his birth.  Fisher Aff., Ex. H & L.

C. David stated that the Human Resources department at the Hotel had told him everything was going to be fine.  Id.  Ritchie stated that it was his responsibility to contact MAP for approval of any inpatient stay, and that this requirement was printed on his insurance card.  Id.  David responded that he and Tara knew there were problems with the baby and that they had a care plan in place and did not want to have to change it.  Id.

Plaintiffs appealed the denial of benefits.  Amended Complaint, ¶ 17; Answer, ¶ 17; Plaintiffs' SOF, ¶ 20.  On January 30, 2003, MED TAC issued a letter denying Plaintiffs' appeal. Fisher Aff., Ex. M; Plaintiffs' SOF, ¶ 21.  The letter stated in relevant part:

> In accordance with the terms of the Plan, benefits for Maternity and Newborn Baby Care Services are not provided to a covered person who has not enrolled in the Healthy Baby Program as required in accordance with the Schedule of Medical Benefits. . . . In addition the plan also requires Modern Assistance (MAP) be contacted for pre-certification for all hospital admissions.

Fisher Aff., Ex. M.

On or about August 7, 2003, Plaintiffs, by their counsel, initiated a second appeal of the denial of benefits and requested a hearing.[4]  Fisher Aff., Ex. N; Fisher Aff., Ex. O; Plaintiffs' SOF, ¶ 22.  On October 1, 2003, Ritchie notified Plaintiffs that the Trustees had granted them a hearing and that they would have an opportunity to present their case and any additional information they believed would assist the Trustees in making a determination.  Fisher Aff., Ex. P; Plaintiffs' SOF, ¶ 23.

On October 8, 2003, Plaintiffs and their counsel appeared before the Trustees and presented their appeal of the denial of benefits.  Plaintiffs' SOF, ¶ 24.  On October 20, 2003, counsel for Plaintiffs presented a written summary of their position.  Fisher Aff., Ex. Q. Thereafter, Ritchie notified Plaintiffs that the Trustees had invoked the internal dispute

---

[4]  Plaintiffs in their Statement of Facts incorrectly state that the second appeal was initiated on April 7, 2003.  See Plaintiffs' SOF, ¶ 21.

resolution process of the Trust Fund Agreement and engaged a neutral arbitrator to determine the matter.  Plaintiffs' SOF, ¶ 25.

V.    The Arbitrator's Decision.

On November 25, 2003, the Arbitrator, Robert M. O'Brien, issued his decision on Plaintiffs' appeal.  See Exhibit 5 to Plaintiffs' Motion.  He upheld the denial of benefits and found that "the Trustees should not pay the medical bills submitted to MED TAC for Samuel Williams' hospitalization."  Id., p. 4.  The Arbitrator found that Plaintiffs had failed to enroll in the Healthy Baby Program and to seek prior approval from MAP for hospital admission.  Id., pp. 5-6.  According to the Arbitrator, "[t]here can be no question that the Summary Plan Description given to members when they enroll in the . . . Plan clearly, unequivocally and repeatedly advises members that they are required to contact the Trust Office as soon as they or a covered dependent's pregnancy is confirmed and enroll in the Healthy Baby Program."  Id., p. 5.  The arbitrator found that David "never enrolled his wife in the Healthy Baby Program as the Plan required."  Id.

As to the MAP approval requirement, the Arbitrator found that that requirement "is reiterated four times in the Summary Plan Description" and stated on the face of the MED TAC insurance card.  Id., p. 6.  He found that David had been issued at least one such card and had used that card in the past.  Id., p. 6.  The Arbitrator found that at no time did Plaintiffs comply with the requirement of contacting MAP.  Id.

The Arbitrator held that David had "failed to comply with two mandatory requirements of the Preferred Provider Plan."  Id.  He thus concluded that the Trustees are not responsible "for payment of medical charges incurred for the treatment of Samuel Williams," noting that

Plaintiffs' failure to comply with either requirement standing alone made them ineligible for payment. Id.

On February 19, 2004, Plaintiffs brought suit under the Employee Retirement Income Security Act of 1974 ("ERISA") to recover the unpaid medical expenses related to Samuel's birth and surgery.

ARGUMENT

I.     The Appropriate Standard and Evidence Before the Court.

Because Plaintiffs seek judicial review of a plan administrative decision, the parties have stipulated that the Court may treat their cross-motions for summary judgment as a "case stated" and have stipulated as to the contents of the administrative record below. See Fisher Aff., Ex. A. Thus, summary judgment is "merely a mechanism for tendering the issue," and the Court is permitted to decide the case on the stipulated record without drawing any special inferences in favor of the party opposing summary judgment. Liston v. Unum Corp. Officer Severance Plan, 330 F.3d 19, 24 (1st Cir. 2003); Radford Trust v. First Unum Life Ins. Co. of America, 321 F.Supp.2d 226, 239-40 (D. Mass. 2004).

Further, the evidence to be considered by the Court is limited to the record before the neutral Arbitrator. See Liston, 330 F.3d at 23 ("The ordinary rule is that review for arbitrariness is on the record made before the entity being reviewed."). In this respect, Plaintiffs' reliance upon bare complaint allegations, rather than the administrative record, is improper. For example, Plaintiffs, citing to their Amended Complaint, claim that they were unaware of the MAP pre-admission requirement. However, Plaintiffs never made that claim in either of their submissions during their administrative appeal. See Fisher Aff., Ex. N & Q. Thus, Plaintiffs should be foreclosed from making that argument now. See Liston, 330 F.3d at 23-24 ("it is at least

doubtful that courts should be in any hurry to consider evidence or claims not presented to the plan administrator").

II.    The Arbitrator's Decision Is Entitled to Deference.

In Count I of their Complaint, Plaintiffs allege a denial of benefits claim under 29 U.S.C.

§ 1132(a)(1)(B) of ERISA.  That claim must fail because the Arbitrator's conclusion that

Plaintiffs failed to satisfy two mandatory requirements of the Plan is entitled to deference.  In

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989), the Supreme Court held that

when a denial of benefits is challenged, if the plan vests the administrator with authority "to

determine eligibility for benefits or to construe the terms of the plan," then the decisions of the

administrator are entitled to deference unless they are "arbitrary and capricious."  See also Leahy

v. Raytheon Co., 315 F.3d 11, 15 (1st Cir. 2002).  Plaintiffs in their motion do not dispute that the

"arbitrary and capricious" standard applies here.[5]  See Plaintiffs' Mem., p. 8 ("The plaintiffs

concede, for the purpose of this motion, that the Plan conferred upon the arbitrator 'a clear grant

of discretionary authority to determine eligibility for benefits,' and therefore, the arbitrator's

decision should be reviewed under an 'arbitrary and capricious' standard.").

Under that standard, the "question is whether the administrator's action on the record

before him was unreasonable."  Liston, 330 F.3d at 24; see also Cook v. Liberty Life Assurance

Co., 320 F.3d 11, 19 (1st Cir. 2003); Lopes v. Metropolitan Life Ins. Co., 332 F.3d 1, 5 (1st Cir.

2003).  In no way was the Arbitrator's decision unreasonable.  The Arbitrator found that

Plaintiffs failed to satisfy two mandatory preconditions for payment of benefits under the Plan:

(1) prior approval by MAP for all hospital admissions and (2) enrollment in the Healthy Baby

---

[5]  This is because the Plan vested the Arbitrator as Claims Reviewer with the discretionary authority to interpret and apply the terms of the Plan and determine Plaintiffs' eligibility for benefits.  See Terry v. Bayer Corp., 145 F.3d 28, 37 (1st Cir. 1998) (where the plan vests the administrator with power "to find necessary facts, determine eligibility

Program. Plaintiffs do not and cannot dispute that these were mandatory preconditions for payment under the Plan. As the Arbitrator recognized, these requirements are stated multiple times (often in bold type) in the Plan documents and on the face of the MED TAC insurance card itself. Nor can Plaintiffs dispute that they never complied with these requirements. Upon confirming that Tara was pregnant, Plaintiffs did not enroll her in the Healthy Baby Program or any time thereafter. They also did not contact MAP prior to any of the hospital admissions relating to Samuel's birth and surgery.

In their motion, Plaintiffs fail to present any evidence that they complied with these requirements, let alone evidence that the Arbitrator's conclusions in this regard were unreasonable. Instead, they attempt to confuse the issue by claiming that "contrary to the Arbitrator's decision, the Plaintiffs did contact *MED TAC* for prior approval of Samuel's hospital admission." Plaintiffs' Mem., p. 13 (emphasis added). But MED TAC is not MAP, and the insurance card that David used to call MED TAC made clear that he also had to contact MAP regarding any hospital admission. Further, Plaintiffs' overstate the record as to the nature of that conversation. According to David, he called MED TAC about <u>coverage</u> under the Plan for Samuel, not to satisfy any pre-admission requirement.[6] <u>See</u> Fisher Aff., Ex. J.

III.    <u>Plaintiffs' Other Arguments Are Unavailing.</u>

Rather than challenge their failure to comply with the above requirements, Plaintiffs also contend that the Arbitrator should have excused that failure. The Arbitrator's unwillingness to do so was reasonable in light of the administrative record before him.

---

for benefits, and interpret the terms of the Plan," then <u>Firestone</u>'s deferential standard of judicial review is mandatory).

[6] Plaintiffs' attempt to claim that this conversation satisfied the pre-admission requirement also is inconsistent with their claimed lack of knowledge of that requirement.

A.    Plaintiffs' Claim That They Were Not Aware of the Requirements Is Not
      Supported by the Administrative Record.

First,  Plaintiffs argue that they were unaware of these two requirements and thus should

not be bound by them.  This argument is belied by the facts.  The Trust Office's practice was to

send a summary of medical benefits to employees by their effective date of coverage.  There is

no evidence in the record that David did not receive that information.  Regardless, in early 2000,

a new MED TAC insurance card and a summary of medical benefits were mailed to all

participants.  The MED TAC card states on its face that contacting MAP was a requirement for

all participants.  Plaintiffs do not claim that David did not have a MED TAC card.  David had

used that card in the past, and had even complied with the requirement of first contacting MAP.

Only weeks before Samuel's birth, David used his insurance card to contact MED TAC.

Further, the summary of benefits mailed to each participant identified both requirements.

The mailing is in an easy-to-read chart form, and the two requirements are identified in the

second box on the first page of the chart.  That box states:

> Modern Assistance Programs, Inc. (MAP) is a utilization review and case
> management organization that must be contacted for approval of certain services
> including all Hospital admissions . . . .  In addition, pregnant women must contact
> the Trust office and enroll in the Healthy Baby Program.  If the Trust office is not
> contacted as required for Maternity and Newborn Baby Care Services, then NO
> benefits are payable for such services.

Fisher Aff., Ex. D.  There is no evidence that David never received this mailing.  Thus, the

Arbitrator reasonably concluded that Plaintiffs were on notice of the requirements yet failed to

comply with them.

Indeed, rather than showing that Plaintiffs were unaware of the requirements of the Plan,

the evidence suggests that Plaintiffs deliberately ignored them.  Tara had her own insurance

through Harvard Pilgrim as a dependent of her ex-husband.  She admitted to MAP that Harvard

Pilgrim had covered her medical expenses throughout her pregnancy and she assumed (incorrectly) that Samuel would be covered as well.  It was only after Harvard Pilgrim apparently refused coverage for Samuel -- after both the birth and surgery had occurred -- that David and Tara sought coverage under the Plan.  Indeed, David twice admitted as much.  In a conversation with the Hotel after Samuel's birth, David explained that he and Tara had been in the process of choosing between the two insurance plans.  And in December 2002, when Ritchie explained to David that MED TAC had denied their claim for benefits because of their failure to comply with the MAP pre-admission requirement and their failure to enroll in the Healthy Baby  Program, David did not claim he was unaware of those requirements.  Instead, David responded that he and Tara "had a care plan in place [for Samuel] and did not want to change it."  Fisher Aff., Ex. C.  Thus, the evidence suggests that David and Tara never enrolled in the Healthy Baby Program and never contacted MAP because they did not want to have to alter the care plan they had in place through Tara's Harvard Pilgrim insurance.

        In any event, Plaintiffs' argument that they lacked knowledge of the requirements is a red herring.  While they cite to ERISA's requirement that the plan administrator furnish copies of a summary plan description, see 29 U.S.C. § 1024, Plaintiffs' argument is not that they did not receive this information at all, but that they did not receive duplicate information after Tara was added as a dependent under the Plan.[7]  Fisher Aff., Ex. I.  Plaintiffs cannot refute that the Trust office sent such information to David at the address on file for him in the past.

        Nor do Plaintiffs claim that they ever requested additional copies of this information and that the Plan refused to provide it.  Instead, the opposite is true.  The only evidence of Plaintiffs'

---

[7]   David is the participant under the Plan, while Tara and Samuel are considered dependents.  Dependents do not receive their own MED TAC insurance cards, which is precisely why the Human Resources department at the Hotel instructed David that Tara should use his social security number.

request for such information is their counsel's August 2003 letter (Fisher Aff., Ex. N), and, in response, the Trust office provided a copy of the Plan less than 30 days later. Fisher Aff., Ex. O. Thus, the Plan never failed to provide information to Plaintiffs, and this likely is why Plaintiffs never brought a claim for relief under 29 U.S.C. § 1024.

Regardless, Plaintiffs misstate the law in claiming that any alleged failure to provide information means that they are entitled to the benefits which were denied. While ERISA provides for a monetary penalty if a plan fails to provide information, see 29 U.S.C. § 1132(c), courts have uniformly held that the failure to provide information does not normally give rise to additional remedies, such as payment of benefits. See Watson v. Deaconess Waltham Hosp., 298 F.3d 102, 113 (1st Cir. 2002) ("Technical violations of ERISA's notice provisions generally do not give rise to substantive remedies outside of § 1132(c) unless there are some exceptional circumstances, such as bad faith, active concealment, or fraud.") (citing cases). Plaintiffs do not and cannot claim that there are any exceptional circumstances here.

B.     David's Conversations With the Hotel and MED TAC Do Not Aid Their Claim.

Plaintiffs also contend that they should be excused from the requirements of the Plan based upon conversations with the Hotel and MED TAC. These alleged conversations do not show that the Arbitrator's decision was arbitrary and capricious.[8]

First, as to David's conversations with the Colonnade Hotel, they are not binding on the Trustees. While Plaintiffs repeatedly claim in their brief that they had conversations with "the Defendant," they are referring to the Hotel, not the Trustees or the Trust office. The Trust Fund administered by the Trustees is a joint labor-management trust fund for employers of hotels throughout the Boston area. It is a separate legal entity from the Hotel. Plaintiffs cite no case

---

[8]   Plaintiffs in their brief meld together their denial of benefits claim with their claim of breach of fiduciary duty. The Trustees submit that under either theory, Plaintiffs' arguments fail.

- 15 -

law for the proposition that the Trustees are required to disregard lawful requirements in the Plan because of alleged statements made by a third party.

In any event, those conversations do not aid Plaintiffs' argument that the Arbitrator's conclusions were arbitrary and capricious. According to Plaintiffs, David had multiple discussions with the Hotel's Human Resources department in which he was assured that his family would be covered under the Plan. Plaintiffs' Mem., p. 11. All of those conversations related to enrolling Tara and Samuel as dependents under the Plan. While Plaintiffs seek to stretch these conversations to encompass their failure to contact MAP and to enroll in the Healthy Baby Program, there is no evidence that these discussions were related to anything more than enrollment.[9] Nor is there any evidence that individuals at the Hotel led David to believe that these plan requirements did not apply to him. While Plaintiffs suggest that these individuals had a duty to notify them of the pre-admission and Healthy Baby Program requirements, even assuming these individuals were fiduciaries, the law is clear that "fiduciaries need not generally provide individualized unsolicited advice" and that "[i]t is uncontroversial . . . that a fiduciary does not have to regularly inform beneficiaries every time a plan term affects them." Watson, 298 F.3d at 155.

The same is true as to David's conversation with a representative of MED TAC in July 2002. As set forth above, that conversation was a discussion about Samuel's coverage as a dependent under the Plan and the process *after* Samuel's birth. Fisher Aff., Ex. I & Q.

---

[9] Even as to the question of enrollment, the evidence submitted to the Arbitrator does not support Plaintiffs' version of events that they were led to believe they all were covered in April 2002. While Plaintiffs claim they enrolled in April under the "family" status, records indicate that David only enrolled Tara at that time and paid only at the "single plus one" rate. He did not enroll Samuel then, as the Plan makes clear that a newborn can only be enrolled upon birth. See Ex. 4 to Plaintiffs' Motion, Summary Plan Description, § 4.2.3. Thus, the Arbitrator concluded that David did not enroll Samuel as a dependent under the Plan in April 2002.

Apparently, the representative told him that the hospital would contact MED TEC after Samuel was born.  Id.  There is no evidence that David and the representative discussed any other issue.

Plaintiffs' further argument that MED TAC should have told David about the requirements of the Plan makes no sense.  David admitted at the hearing before the Trustees that he had used his insurance card to call MED TAC.  Since that card stated the pre-admission requirement on its face, there was no reason for MED TAC to believe that David was unaware of that requirement.  The same is true of enrollment in the Healthy Baby Program.  David's call to MED TAC occurred only weeks before Samuel's birth, months after Tara should have enrolled in the program.

Finally, Plaintiffs' theory that these conversation somehow relieved them of their obligations to comply with the terms of the Plan is contrary to the law.  In Law v. Ernst & Young, 956 F.2d 364 (1st Cir. 1992), the First Circuit held that the recovery of benefits based upon an oral representation was limited to instances where the alleged oral representation constituted an *interpretation* of language of an ERISA plan and expressly rejected a claim where the plaintiff sought to use the oral representation as a *modification* of the terms of the plan.  Id. at 369-70.  Contrary to that decision, Plaintiffs seek to use their conversations with the Hotel and MED TAC to circumvent the requirements of the Plan.[10]

C.    Plaintiffs' Public Policy Claim Is Without Merit.

Finally, Plaintiffs contend that the Arbitrator should have excused their failure to comply with the requirements of the Plan as a matter of public policy, citing to Samuel's birth defect and the medical expenses incurred.  According to Plaintiffs, their compliance with the pre-admission

---

[10]  Plaintiffs in their brief rely on DePina v. General Dynamics Corp., 674 F.Supp. 46 (D. Mass. 1987), claiming that it is "analogous" to this case because there were oral conversations with the parties about coverage.  But there, the benefit plan denied the plaintiff's claim for benefits because it argued that his hospitalization for alcoholism was

requirement and enrollment in the Healthy Baby Program would not have changed the medical attention needed.

This argument is counterfactual and misses the point. Both requirements are intended to ensure that participants receive the best possible care while at the same time containing costs. This enables participants to know up front what services are and are not covered. Whether contacting MAP or enrolling in the Healthy Baby Program would have resulted in coverage for care different from that actually received by Plaintiffs is unknown. Indeed, this is precisely why Plaintiffs did not satisfy either requirement: they had a care plan in place under Tara's Harvard Pilgrim insurance and did not want to risk having to change it. No public policy under ERISA is served by sanctioning their conduct, as it only undermines a plan administrator's ability to protect all participants from uncontrolled costs.

IV.    Plaintiffs' Claim of Breach of Fiduciary Duty Is Not Cognizable.

In Count II of their Complaint, Plaintiffs attempt to recover the medical benefits via a claim for breach of fiduciary duties in violation of 29 U.S.C. § 1132. Amended Complaint, ¶¶ 30-36. The Trustees are entitled to summary judgment on this claim as well.

To the extent that Plaintiffs are asserting a claim under 29 U.S.C. § 1132(a)(2), it is well established that a plan participant cannot bring a claim for damages on his own behalf under Section 1132(a)(2). See Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142-44 (1985). See also Watson , 298 F.3d at 109; Larocca v. Borden, Inc., 276 F.3d 22, 28 n.6 (1st Cir. 2002). While the Supreme Court recognized in Varity Corp. v. Howe, 516 U.S. 489 (1996) that a participant could bring a claim for individual relief for breach of fiduciary duty under 29 U.S.C. § 1132 (a)(3), ERISA's "catchall" provision, remedies under that section are limited to

---

not recommended or approved by a physician. The Court found that conclusion unreasonable because the admitting physician at the hospital retained the plaintiff for treatment and counseling for substance abuse. Id. at 52.

traditional "equitable" remedies, not legal damages.  See Mertens v. Hewitt Assocs., 508 U.S.

248, 256-58 (1993).  Here Plaintiffs seek to recover payment of Samuel's medical expenses.

Such relief is not equitable in nature and thus not recoverable under a claim for breach of

fiduciary duty.[11]  See Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 209-11

(2002); Samson v. Rubin, C.A. No. 00-10215-DPW, 2002 U.S. Dist. LEXIS 20877, at *16 (D.

Mass. Oct. 29, 2002) (granting summary judgment for defendants on plaintiff's breach of

fiduciary duty claim where claim "at bottom" is to recover long-term disability benefits, relief

"outside the scope of equitable remedies envisioned by § 1132(a)(3)").

Regardless, Plaintiffs' claim fails on the facts.  While Plaintiffs allege in their Amended

Complaint that the Trustees misused and misappropriated fund assets, there is no evidence to

support such an allegation.  Instead, Plaintiffs simply are trying to recast their denial of benefits

claims as a breach of fiduciary duty.  But in denying their claim for benefits, the Trustees merely

abided by the express terms of the Plan.

Further, as set forth above, Plaintiffs also cannot make out a claim for breach of fiduciary

duties against the Trustees based on any conversation with the Hotel or MED TAC or any

alleged failure to provide information.  This case is controlled by the First Circuit's decision in

Watson v. Deaconness Waltham Hosp., 298 F.3d 102 (1st Cir. 2002).  Like Plaintiffs' allegations

here, in that case, the plaintiff brought a claim for breach of fiduciary duty, claiming he was

unaware of benefits available to him under a long-term disability plan and that representatives of

his employer's human resources department failed to notify him of certain plan terms.  Unlike

David here, however, the plaintiff never received any relevant information about the plan.  The

---

[11]   Moreover, a claim under the "catch all" provision is limited to where Plaintiffs have no other avenue for relief
under ERISA for the alleged injury.  See Varity, 516 U.S. at 498, 506, 515.  Plaintiffs can and do assert a claim for
denial of benefits under § 1132(a)(1)(B).  While Defendants submit that that claim fails as a matter of law because

First Circuit nonetheless upheld the grant of summary judgment to the employer, explaining that this mere technical violation of ERISA did not amount to a breach of fiduciary duties. Id. at 113-14. The Court explained that there is no evidence that the employer tried to actively conceal the terms of the benefit plan, regularly failed to comply with ERISA's notice requirements or acted in bad faith. Id. As in that case, Plaintiffs can point to no such evidence in this case, and thus their claim for breach of fiduciary duty must fail.

CONCLUSION

For these reasons, the Trustees respectfully request that the Court deny Plaintiffs' Motion for Summary Judgment, grant their cross-motion for summary judgment and grant such further relief as the Court deems just and proper.

> GREATER BOSTON HOTEL EMPLOYEES,
> LOCAL 26 HEALTH AND WELFARE TRUST
> FUND BOARD OF TRUSTEES,
>
> By its attorneys,
>
> s/ Robert A. Fisher
> Jeffrey H. Lerer, BBO #294500
> Robert A. Fisher, BBO # 643797
> Foley Hoag LLP
> 155 Seaport Boulevard
> Boston, MA 02210
> (617) 832-1000
>
> Domenic Bozzotto
> Law Office of Domenic Bozzotto P.C.
> 58 Berkeley Street, 2nd Floor
> Boston, MA  02116
> (617) 292-7710

Dated:  March 25, 2005

---

Plaintiffs failed to comply with mandatory requirements of the Plan, Plaintiffs cannot circumvent their failure by reforming their denial of benefits claim as one for breach of fiduciary duty.

CERTIFICATE OF SERVICE

I, Robert A. Fisher, hereby certify that on March 25, 2005 I caused to be served by U.S. mail, postage prepaid, a true and correct copy of the foregoing document upon counsel of record for each other party in this matter.

s/ Robert A. Fisher