UNITED STATES DISTRICT COURT
THE DISTRICT OF MASSACHUSETTS

SAMUEL WILLIAMS, PPA DAVID
WILLIAMS, DAVID WILLIAMS and
TARA WILLIAMS,

               Plaintiffs,

      v.

GREATER BOSTON HOTEL
EMPLOYEES, LOCAL 26/HEALTH AND
WELFARE TRUST FUNDS BOARD OF
TRUSTEES,

             Defendant.

CIVIL ACTION No. 04 CV 10338 (JLA)

### AFFIDAVIT OF ROBERT A. FISHER IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND ITS CROSS-MOTION FOR SUMMARY JUDGMENT

I, Robert A. Fisher, do hereby depose and swear as follows:

1.      I am co-counsel of record for Defendant Greater Boston Hotel Employees, Local 26 Health and Welfare Trust Funds Board of Trustees in the above-captioned matter. I am submitting this affidavit in support of Defendant's Opposition to Plaintiffs' Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment.

2.      Attached hereto at Exhibit A is a true and correct copy of a stipulation between the parties as to the contents of the administrative record below. Also attached at Exhibit A is a copy of my September 21, 2004 letter to counsel for Plaintiffs, which is referenced in the stipulation.

3.      Attached hereto at Exhibit B are true and correct copies of relevant excerpts from the Amended and Restated Agreement and Declaration of Trust Creating the Greater Boston Hotel Employee Health and Welfare Trust Fund.

4.      Attached hereto at Exhibit C is a true and correct copy (without attachment) of an October 31, 2003 letter drafted by Fiona Ritchie, administrator of the Trust Fund.

5.      Attached hereto at Exhibit D is a true and correct copy of a document entitled, GREATER BOSTON HOTEL EMPLOYEES LOCAL 26, Preferred Provider Plan (PPO) Through Health Care Value Management, Inc. (HCVM), Effective January 1, 2000.

6.      Attached hereto at Exhibit E is a true and correct copy of a February 11, 2000 letter from Amanda Chan, Fund Administrator.

7.      Attached hereto at Exhibit F is a true and correct copy of a MED TAC insurance card.

8.      Attached hereto at Exhibit G is a true and correct copy of Change Request form, in which Plaintiff David Williams added Plaintiff Tara (Deeley) Williams as a covered dependent.

9.      Attached hereto at Exhibit H is a written statement from Ana Petrovich, Director of Human Resources at the Colonnade Hotel.

10.      Attached hereto at Exhibit I is a true and correct copy of draft Minutes of the Meeting of the Board of Trustees on October 8, 2003.

11.      Attached hereto at Exhibit J is a true and correct copy of Change Request form, in which Plaintiff David Williams added Plaintiff Samuel Williams as a covered dependent.

12.      Attached hereto at Exhibit K is a true and correct copy of a case notes from Modern Assistance Programs, Inc. for Plaintiff Samuel Williams.

13.      Attached hereto at Exhibit L is a true and correct copy of a letter dated October 21, 2002 from Jennifer Ackley.

14.     Attached hereto at Exhibit M is a true and correct copy of the January 30, 2003 Notice of Decision on Claim Appeal.

15.     Attached hereto at Exhibit N is a true and correct copy of a August 7, 2003 letter from Stefani Field, counsel for Plaintiffs.

16.     Attached hereto at Exhibit O is a true and correct copy of a September 5, 2003 letter (without attachments) from Fiona Ritchie to Stefani Field.

17.     Attached hereto at Exhibit P is a true and correct copy of an October 1, 2003 letter from Fiona Ritchie to Stefani Field.

18.     Attached hereto at Exhibit Q is a true and correct copy of an October 20, 2003 letter from Stefani Field to the Trustees.

19.     As set forth in the Stipulation and the September 21, 2004 letter (both attached at Exhibit A hereto), each of the documents attached at Exhibits B through Q were submitted to the Arbitrator O'Brien as part of the administrative review of Plaintiffs' claim for benefits.

Sworn to this 25th day of March 2004 under the pains and penalties of perjury,


Robert A. Fisher


## CERTIFICATE OF SERVICE

I, Robert A. Fisher, hereby certify that on March 25, 2005 I caused to be served by U.S. mail, postage prepaid, a true and correct copy of the foregoing document upon counsel of record for each other party in this matter.

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SAMUEL WILLIAMS, PPA DAVID WILLIAMS, DAVID WILLIAMS and TARA WILLIAMS,<br><br>**Plaintiffs**<br><br>vs.<br><br>GREATER BOSTON HOTEL EMPLOYEES, LOCAL 26 HEALTH AND WELFARE TRUST FUNDS BOARD OF TRUSTEES<br><br>**Defendant** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Civil Action No.<br>04-CV-10338 WGY** |

### STIPULATION OF THE PARTIES

The parties hereby stipulate that the documents listed in the letter dated September 21, 2004 from counsel to the Defendant to counsel for Plaintiffs represents the contents of the record before Arbitrator O'Brien in this matter and further stipulate that cross-motions for summary judgment may be treated by the Court as a "case stated."

PLAINTIFFS,
By their attorneys,

Stefani M. Field, BBO#656442
Gold, Albanese, Barletti & Velazquez
50 Congress Street-Suite 225
Boston, MA 02109
(617)723-5118

DEFENDANT,
By their attorneys,

Robert A. Fisher, BBO#643797
Foley Hoag, LLP
155 Seaport Boulevard
Boston, MA 02116
(617)832-1000



# FOLEY HOAG LLP
ATTORNEYS AT LAW

Robert A. Fisher
Boston Office
617.832.1235
rfisher@foleyhoag.com

September 21, 2004

Stefani M. Field, Esq.
Gold, Albanese, Barletti & Velazquez
50 Congress Street, Suite 225
Boston, MA 02109

Re:    Williams et al. v. Greater Boston Hotel Employees, Local 26 Health and
Welfare Trust Funds Board of Trustees, 04-CV-10338 (WGY)

Dear Stefani:

I write in response to your September 14, 2004 letter. I have no objection to providing you with a description of what was provided to the arbitrator, although my understanding is that this was already provided to you.

The following documents were provided to Arbitrator O'Brien:

1.    The Amended and Restated Agreement of Trust Creating The Greater Boston Hotel Employee Health and Welfare Trust Fund

2.    Greater Boston Hotel Employees Local 26 Benefits Book

3.    October 31, 2003 Chronology Letter from Fiona Ritchie. That letter enclosed the following documents:

      a.    David Williams's 4/8/98 Enrollment form

      b.    Change Request Form, effective 4/13/02

      c.    Med Tac hours and contributions printout

      d.    a sample Med Tac insurance card

      e.    Summary of Medical Benefits, effective 1/1/2000

      f.    Letter from Trust Office, dated 2/11/00

      g.    Trust Office Mailing Distribution Log

FHBOSTON/1106917.1

Stefani M. Field, Esq.
September 21, 2004
Page 2

       h.       Modern Assistance Programs, Inc. Case Notes

       i.       Change Request, dated 9/17/02

       j.       Letter from the Colonnade Hotel, dated 10/21/02

       k.       Med Tac Explanation of Benefit reprints

       l..       Notice of Decision on Claim Appeal, dated 1/30/03

       m.       Letter to Med Tac from Stefani Field, dated 8/7/03

       n.       Letter to Stefani Field from Fiona Ritchie, dated 9/5/03

       o.       Letter to Stefani Field from Fiona Ritchie, dated 10/1/03

       p.       Letter to the Board of Trustees from Stefani Field, dated 10/20/03 (with attachments)

       q.       Letter to Stefani Field from Fiona Ritchie, dated 10/24/03

4.       Outline of case considerations

5.       Minutes of the October 8, 2003 meeting of the Board of Trustees

6.       Cover letter to Arbitrator O'Brien

7.       Colonnade submissions

       a.       Excerpt from the Employee Handbook

       b.       1 page Chronology from Ana Petrovich, Director of Human Resources

       c.       E-mail from Jenn Ackley, dated 8/13/2002

       d.       E-mail from Jenn Ackley, dated 10/16/03

       e.       E-mail from Jenn Ackley, dated 10/31/03

Stefani M. Field, Esq.
September 21, 2004
Page 3


    Let me know whether you will stipulate that these were the materials before
Arbitrator O'Brien.  If you have any questions, please contact me.

                                    Very truly yours,


                                    Robert A. Fisher


cc:     Jeff Lerer, Esq.
        Domenic Bozzotto, Esq.

**EXHIBIT B**

# AMENDED AND RESTATED AGREEMENT
## AND DECLARATION OF TRUST CREATING THE
## GREATER BOSTON HOTEL EMPLOYEE
## HEALTH AND WELFARE TRUST FUND

WHEREAS, there has heretofore been entered into an Agreement and Declaration of Trust, dated July 8, 1959, by and between the Local Joint Executive Board of Boston, affiliated with the Hotel and Restaurant Employees and Bartenders International Union and certain members of the City of Boston Hotel Association ("Trust Agreement"); and

WHEREAS, the parties to this Trust Agreement are now known as the Hotel, Restaurant, Institutional Employees and Bartenders Union, Local 26, AFL-CIO, affiliated with the Hotel Employees and Restaurant Employees International Union, AFL-CIO ("the Union") and certain member hotels of the Greater Boston Hotel and Motor Inn Association ("the Employer"); and

WHEREAS, said Trust Agreement has heretofore been amended; and

WHEREAS, under Article VII of said Trust Agreement, the Trustees, by majority vote, have the power and authority to amend the Trust Agreement from time to time as therein provided; and

WHEREAS, it is determined to be desirable to amend said Trust Agreement to restate the same so as to incorporate therein all of the amendments adopted heretofore or as part of this restatement;

NOW, THEREFORE, the Trustees, designated and in office, as such, have executed this Amended and Restated Agreement and Declaration of Trust as indicating their acceptance of the respective duties imposed upon them as Trustees under the terms of this Agreement, to read as follows:

WHEREAS, the Hotel, Restaurant, Institutional Employees and Bartenders Union, Local 26, AFL-CIO, affiliated with the Union, has now and hereafter will have in effect Agreements with certain Employers requiring payments by the Employers and Employees into a Trust Fund for the purpose of providing health, dental, vision care, insurance, legal service, educational, and housing benefits to eligible Employees; and

WHEREAS, various other Employers or Employer Associations have entered into, or will from time to time hereafter enter into, Collective Bargaining Agreements with other Local Unions or groups affiliated with the Union on behalf of Employees represented by them, which Collective Bargaining Agreements may provide for the payment by said Employers of hourly contributions for health and welfare

purposes on behalf of certain Employees as set forth in the Collective Bargaining Agreements and the Plan; and

WHEREAS, the sums payable to the Trust Fund, as aforesaid, are for the purposes of providing health and welfare benefits as now are or may hereafter be authorized or permitted by law for eligible Employees, their families, and dependents, as determined hereunder and in the Plan; and

WHEREAS, to affect the aforesaid purpose, it is desired to establish and maintain a Trust Fund that will conform to the applicable requirements of the Labor-Management Relations Act of 1947, as amended, the Employee Retirement Income Security Act of 1974, as amended, and the Internal Revenue Code, as amended; and

WHEREAS, the said Trust Fund is to be known as the "Greater Boston Hotel Employee Health and Welfare Trust Fund"; and

WHEREAS, it is desired to set forth the terms and conditions under which the said Trust Fund is to be established and administered; and

WHEREAS, the Trustees have been duly appointed in accordance with the provisions of this Agreement;

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and agreements herein contained, it is hereby agreed and declared as follows:

## ARTICLE I
## DEFINITIONS

### Section 1.1    Administrator.

The Trustees, collectively and in their representative and fiduciary capacity, shall be the "Administrator" of this Fund, as that term is used in ERISA.

2

Section 1.2    **Beneficiary**.

The term "Beneficiary" shall mean a person designated by the terms of the Plan created pursuant to this Agreement who is, or may become, entitled to a benefit.

Section 1.3    **Collective Bargaining Agreement**.

The term "Collective Bargaining Agreement" shall mean any written labor contract or other type of written agreement, regardless of its form, now existing or to be executed in the future by and between an Employer and the Union, which provides for contributions to this Trust Fund in a manner acceptable to the Trustees, as well as any extensions, amendments, modifications, and renewals thereof, or successor agreements thereto.

Section 1.4    **Contributions**.

The term "Contributions" shall mean payments made by Employers to the Trust Fund for each hour of covered employment as required by the Collective Bargaining Agreement, Participation Agreement, or other Agreements entered into between the Employers and the Trust Fund.  The term "Contributions" shall also include payments made by eligible Participants.

Section 1.5    **Covered Employment**.

The term "Covered Employment" shall mean employment performed by an Employee for which contributions are required to be made to the Trust Fund on the Employee's behalf.

Section 1.6    **Employee**.

The term "Employee" shall mean any Employee of an Employer covered by such Collective Bargaining Agreement, Participation Agreement, or other Agreements entered into between Employers and the Trust Fund,  for whom contributions are required to be made to the Trust Fund, their Spouses, Dependents and/or Beneficiaries and full-time salaried Employees of Local Unions.  The term "Employee" shall also include all Employees of the Union on behalf of whom said Union agrees to make and the Trustees agree to accept contributions.

3

**Section 1.7    Employer**.

The term "Employer" shall mean and include any person, partnership, firm, corporation, or governmental agency that is legally obligated by a Collective Bargaining Agreement, Participation Agreement, or other Agreements entered into between Employers and the Union, to make contributions to the Trust Fund on behalf of Employees represented by the Union with respect to covered employment performed for the Employer. The term "Employer" shall also mean a Local Union if such Local Union is accepted for participation in the Welfare Fund.

**Section 1.8    ERISA**.

The term "ERISA" means the "Employee Retirement Income Security Act of 1974" as the same may be amended from time to time, and all rules and regulations issued pursuant to ERISA.

**Section 1.9    Fund**.

The term "Fund" or "Trust Fund" shall mean the "Greater Boston Hotel Employee Health and Welfare Trust Fund" as created and established under this Agreement and the entire Trust Estate as, from time to time, it may be constituted, including, but not limited to, all monies received in the form of contributions, income from investments, dividends, refunds, or other sums payable to the Trustees, and any other property received and held by the Trustees for the use and purposes of the Trust Fund as set forth herein.

**Section 1.10    Participant**.

The term "Participant" shall mean an Employee or former Employee who is or may become eligible under the Plan to receive benefits from the Trust Fund.

**Section 1.11    Participation Agreement**.

The term "Participation Agreement" shall mean a written agreement that legally obligates an Employer to make contributions to this Fund on behalf of Employees who are not represented by the Union in a manner acceptable to the Trustees and as permitted by this Agreement, the Plan, and applicable law.

4

### Section 1.12  Plan.

The term "Plan" or "Welfare Plan" shall mean the plan, program, method, rules, and procedures for the payment of benefits from the Greater Boston Hotel Employee Health and Welfare Trust, including the conditions for eligibility, as adopted by the Trustees pursuant to this Agreement and applicable law, and which may, from time to time, be amended by the Trustees.

### Section 1.13  Trustees.

The term "Trustees" shall mean the persons designated herein as Trustees, together with their successors designated and appointed in accordance with Article IV of this Agreement.

### Section 1.14  Union.

The term "Union" shall mean the Hotel, Restaurant, Institutional Employees and Bartenders International Union, Local 26, AFL-CIO, and such other labor organizations affiliated with the Hotel Employees and Restaurant Employees International Union, or any other labor organization, which are or which become party to the Trust Agreement by executing a Collective Bargaining Agreement with an Employer, as defined herein, requiring contributions to this Fund.

## ARTICLE II
## CREATION AND PURPOSES OF FUND

### Section 2.1  Creation and Name.

There is hereby created a Trust Fund known as the "Greater Boston Hotel Employee Health and Welfare Trust Fund." This Fund is and shall constitute an irrevocable trust for the benefit of the Fund's Participants and Beneficiaries, created pursuant to the provisions of the Labor-Management Relations Act of 1947, as amended, the Employee Retirement Income Security Act of 1974, as amended, and the Internal Revenue Code, as amended.

5

### Section 2.2    Purpose of Fund.

The Trust Fund is created, established, and shall be maintained, and the Trustees agree to receive, hold and administer the Trust Fund, for the purpose of providing medical, dental, hospital care, life insurance, disability, and sickness benefits, education benefits, housing benefits, and legal benefits that now are, or hereafter may be, authorized or permitted by law for Participants and their Beneficiaries and as are in accordance with the provisions set forth herein and in the Plan; and for the purpose of defraying the reasonable expenses of administering this Fund and the Plan.

### Section 2.3    Compliance with Trust Agreement.

By executing or adopting a Collective Bargaining Agreement, Participation Agreement, or other written Agreements requiring contributions to the Trust Fund, and by making contributions to said Fund in accordance with such Agreement with the intention of providing health and welfare benefits for its Employees, the Employer shall be deemed to be a party to this Trust Agreement and to have accepted and agreed to comply with and be bound by all of the terms of that Trust Agreement, in its present form and as amended from time to time, and to have ratified (without the necessity of notice), all acts and decisions taken or to be taken by the Trustees for the proper administration of the Trust, as well as all rules, regulations, and procedures promulgated or to be promulgated by the Trustees to effectuate the purposes of the Trust and the Plan, and to carry out their duties as fiduciaries under ERISA.


## ARTICLE III
## CONTENTS OF THE FUND

### Section 3.1    Contents.

The Trust Fund shall mean the Trust Fund established under this Agreement and the entire Trust Estate as from time to time it may be constituted, including, but not limited to:

(a)    contributions made by Employers and Employees pursuant to the provisions of Collective Bargaining Agreements, Participation Agreements, or similar written Agreements acceptable to the Trustees, which require contributions to be made to the Trust Fund or to similar funds which have merged or combined with this Fund; and any and all Employee contribution rate increases adopted by the Trustees as permitted by this Agreement, and all rate increases included in Collective Bargaining Agreements;

6

**Section 4.11   Meetings; Notices.**

The Trustees shall meet at least once a year and at such other times as they deem it necessary to transact their business, and all official meetings of the Trustees shall be attended only by the Trustees and shall not be open to the public, except that such other persons as designated by the Trustees may attend when invited to do so.

**Section 4.12   Special Meetings.**

The Chairman and the Treasurer of the Board of Trustees, upon agreement, may call a special meeting of the Trustees at any time upon giving three (3) days' written notice of the time and place of such meeting. A special meeting of the Trustees may be held at any time without notice if all the Trustees consent thereto in writing. If all the Trustees shall agree in writing on any motion, resolution, proposal, or other action, no special meeting thereon need be held to authorize such action.

**Section 4.13   Action without a Meeting.**

Action may be taken or authorized by the Trustees without a meeting if such action shall be evidenced in writing and signed by two-thirds (2/3) of the Union Trustees and two-thirds (2/3) of the Employer Trustees.

**Section 4.14   Quorum; Votes.**

A quorum of the Trustees shall consist of four (4) Trustees, provided that at least two (2) of such members are Trustees designated by the Union and two (2) of such members are Trustees designated by the Employer. The decisions of the Trustees shall be determined by a majority vote of the votes cast at the meeting.

**Section 4.15   Manner of Acting in the Event of Deadlock.**

(a)     In the event a dispute arises in the administration of the Trust upon which the Trustees are deadlocked, the Trustees shall submit such question to arbitration and the decision of the arbitrator shall be binding upon all parties to any persons interested under this Agreement.

(b)     In the event that such a deadlock exists, the Trustees shall meet for the purpose of agreeing upon an impartial arbitrator to break such deadlock by deciding the dispute in question. In the event that the Trustees are unable to agree upon the selection of such impartial umpire within ten (10)

11

days of receipt of notice that a deadlock exists, either group of Trustees (i.e., Employer or Union) may apply to the American Arbitration Association for the designation of an arbitrator. The reasonable compensation of such arbitrator and the costs and expenses (including, without limitation, attorney and reporter fees) incidental to any proceedings instituted to break a deadlock shall be paid by the Trust Fund.

(c)     Any impartial arbitrator selected or designated to break a deadlock shall be required to enter his decision within a reasonable time fixed by the Trustees. The scope of any such proceeding before such impartial arbitrator shall be limited to the provisions of this Trust Agreement and to the provisions of the rules, regulations, and bylaws adopted by the Trustees and to the Plan of Benefits established by them. The impartial arbitrator shall have no jurisdiction or authority to change or modify the provisions of this Trust Agreement or the rules, regulations, and bylaws adopted by the Trustees, or to decide any issue arising under or involving the interpretation of any Collective Bargaining Agreement between the Union and the Employers, and such impartial arbitrator shall have no power or authority to change or modify any provisions of any such Collective Bargaining Agreement.

## Section 4.16   Removal of Trustee (Violation of ERISA).

The Board of Trustees shall initiate an action to cause the removal of any fellow Trustee who may be serving as a Trustee in violation of ERISA. The Trustees shall notify the party that appointed the Trustee in question of any such action. The vacancy or vacancies caused by such a removal shall be filled in accordance with Sections 4.2 and 4.6 of this Article.

## Section 4.17   Removal of Trustee (Failure to Attend Meetings).

Any Trustee who misses three (3) consecutive Trustee meetings may be removed as a Trustee, if the Board of Trustees determines that such absences were not for good cause.

## Section 4.18   Designation of Address.

Each signatory to this Agreement and each successor Trustee shall deposit with the Trustees a written designation of address to which all notices and reports required or permitted herein may be mailed.

12

# BOARD OF TRUSTEES

**Union Trustees:**

Domenic Bozzotto

Janice Loux

Paul Lanni

**Employer Trustees:**

James T. Stamas

Robert Morse

Thomas Loughlin

Greater Boston Hotel Employee Health and Welfare Trust Fund
Amended and Restated Agreement and Declaration of Trust

HM141203.T01HM/E.

FEDER & ASSOCIATES, P.C.
Attorneys at Law

**EXHIBIT C**

# GREATER BOSTON HOTEL EMPLOYEES/LOCAL 26 TRUST FUNDS

### *20 Park Plaza, Suite 900, Boston, Massachusetts 02116*
### *Telephone (617) 451-0318    Fax (617) 451-2676*

*Chairman and Trustee*
James T. Stamas

*Treasurer and Trustee*
Janice Loux
Local 26

*Administrator*
Fiona Ritchie

*Trustees*
David Colella
The Colonnade Hotel
Henry C. Green, Sr.
Local 26
Jeffrey K. Nelson
Local 26

October 31, 2003

Mr. Jeff Lerer
Foley Hoag
World Trade Center West
155 Seaport Boulevard
Boston, MA 02210-2600

    Re: David Williams Appeal

Dear Jeff:

    Per your request, enclosed are documents potentially relevant to David Williams' appeal. Below is a brief narrative to provide a context for these materials; they are numbered and arranged accordingly behind this letter.

    David Williams enrolled for single coverage when he was hired as a server at Brasserie Jo on 4/8/98 [#1 – **Enrollment form**]. This coverage became effective on 7/7/98. He added his spouse to the Plan effective the date of their marriage, 4/13/02 [#2 – **Change request**]. The hotel began withholding employee contributions at the single plus one rate of $27/week at or near the time he completed the change form on 3/21/02 [#3 – **MED TAC hours and contributions printout**].

    The Trust Office's practice is to send employees duplicate MED TAC insurance cards [#4 – **sample MED TAC card**] and benefits information, including a summary of medical benefits, timed to arrive on or near the employee's effective date. This information is sent via first class mail to the most recent address on file with MED TAC. In addition, since the Health and Welfare Plan was expanded effective 1/1/00, an updated summary of medical benefits was sent to all active participants on 12/17/99 [#5 – **Summary of Medical Benefits**]. This mailing was followed by mailings with new MED TAC and prescription cards, and a reminder of the plan change on 2/11/00 [#6 – **Trust Office letter**]. Additional MED TAC and prescription cards are available at any time upon request from the Trust Office. The Trust Office's mailing log shows that duplicate prescription cards were sent to David Williams on 8/26/02

[#7 – **Mailing Log**]. Dependents use MED TAC and prescription cards that are identical to the member's.

MED TAC's records show that David Williams used his insurance prior to 2002, including services that required MAP pre-approval. MED TAC does not document member calls, but hospital calls to verify benefits are recorded in a logbook. David Williams' son Samuel was born on 8/10/02. The first information the Plan received about the birth was a call from Children's Hospital to MED TAC to determine coverage for the baby on 9/17/02. The hospital representative was told the Plan had no record of Samuel Williams, and was referred to the Modern Assistance Program, the Plan's case management firm. Children's Hospital called MAP on 9/17/02 and was again advised there was no record of the birth, nor was there a record of enrollment in the Healthy Baby Program [#8 – **MAP case notes**].

MED TAC received an enrollment form for Samuel Williams on 9/23/02 [#9 – **Change request**]. The baby was added to the Plan, however since the form was completed more than thirty days after the birth, the Plan's pre-existing conditions exclusion was initially applied. Upon receipt of a clerical error letter from the employer [#10 – **Colonnade letter**], the pre-existing condition exclusion was waived, and the child's effective date was changed to 8/10/02.

Inpatient hospital bills began to arrive for the baby in November 2002, and were denied by MED TAC [#11 – **Explanation of Benefits reprints**]. There were three problems with the claims:

> 1. The mother was not enrolled in the Healthy Baby Program. Under the terms of the Plan, maternity and newborn charges are not covered if the mother did not enroll in the Healthy Baby Program.
>
> 2. The baby was not enrolled on the Plan within thirty days of birth. This reason was later waived, as explained above.
>
> 3. MAP was not contacted for approval of inpatient charges. Under the terms of the Plan in effect at that time, if MAP was not contacted prior to a scheduled admission or within 48 hours of an emergency admission, no benefits were payable.

David Williams called me on 12/12/02. I explained the reasons for the denial as outlined above. He said that Human Resources had told him everything would be fine. I told him that it was his responsibility, not Human Resources', to contact MAP for approval of an inpatient stay. I pointed out that this is printed right on the MED TAC card. He said that he and the child's mother knew there were problems with the baby, and had a care plan in place and did not want to change it.

David Williams appealed the denial of his son's claims. As no new information was brought forward, MED TAC denied the appeal on 1/30/03 [**#12 – Notice of Decision on Claim Appeal**].

MED TAC received a second appeal of the denial on 8/11/03 from Attorney Stefani Field [**#13 – Letter from Stefani Field**]. I sent two letters in response to hers, one to send her plan information, the second to invite her and David Williams to a hearing at the Trustees' meeting on October 8, 2003 [**#14 and #15 – Trust Office letters and benefits book**]. David Williams, his wife Tara Williams, and Stefani Field spoke to the Trustees on October 8, 2003, and followed up with a written summary of their appeal [**#16 – Letter from Stefani Field**]. The final letter to date is from me advising Ms. Field that a decision on the appeal will be forthcoming in November [**#17 – Trust Office letter**].

I have enclosed a copy of the Plan Document in effect at the time Samuel Williams' claims were incurred. If you need further information, please do not hesitate to call.

Sincerely,

Fiona Ritchie
Administrator

enclosures

**EXHIBIT D**

# GREATER BOSTON HOTEL EMPLOYEES LOCAL 26

## Preferred Provider Plan (PPO) through Health Care Value Management, Inc. (HCVM)

### Effective January 1, 2000

| | |
|---|---|
| • *Lifetime Maximums* | $1,000,000 per Covered Person per Lifetime for all services combined. |
| • *Cost Containment Programs* | **MODERN ASSISTANCE PROGRAMS, INC. (MAP)**<br><br>Modern Assistance Programs, Inc. (MAP) is a utilization review and case management organization that must be contacted for approval of certain services including all Hospital admissions, all Psychiatric and Alcohol and Drug Abuse Care, all Chiropractic Care, all Hospice and Home Health Care and all Alternative Care (acupuncture, naturopathy, homeopathy and nutrition counseling). In addition, pregnant women must contact the Trust office and enroll in the Healthy Baby Program. If the Trust office is not contacted as required for Maternity and Newborn Baby Care services, then NO benefits are payable for such services. |
| • *HCVM Network Coverage* | Services which do not require MAP approval are subject to the HCVM PPO Network to determine the level of benefits under the Plan.<br><br>If these services are rendered by In Network (HCVM) Providers:<br>Most benefits are covered at 100%. Some Co-payments and other limitations may apply. In Network Providers are reimbursed according to the contracted amount.<br><br>If services are rendered by Out Of Network (non-HCVM) Providers:<br>Benefits are subject to the following Deductible and Coinsurance levels:<br><br>*Out of Network (non-HCVM):*<br>   Out of Network Up Front Deductible:<br>   $150 per person per Calendar Year.<br>   $300 per family per Calendar Year.<br><br>   Out of Network Coinsurance:<br>   The plan pays 80% of the first $10,000 of charges per person<br>   ($20,000 per family) per Calendar Year; 100% thereafter.<br><br>   Out of Network Total Out of Pocket Amount:<br>   $2,150 per person per Calendar Year.<br>   $4,300 per family per Calendar Year.<br><br>Out of Network (non-HCVM) Providers are reimbursed according to the Usual & Customary Charge (U&CC). |

# SUMMARY OF MEDICAL BENEFITS

## INPATIENT HOSPITAL EXPENSES

| Type of Service | You Pay | Plan Pays | Cost Containment Programs apply (Yes/No) |
|---|---|---|---|
| • Hospital Room and Board (Semiprivate/ Intensive Care, Ancillary Services) | Nothing. | 100% for an unlimited number of days. | Yes, prior MAP approval is required. If MAP approval is not obtained, NO benefits are payable for these services. |
| • Physician Visits | Nothing. | 100%. | Yes, prior MAP approval is required. If MAP approval is not obtained, NO benefits are payable for these services. |
| • Surgery | Nothing. | 100%. | Yes, prior MAP approval is required. If MAP approval is not obtained, NO benefits are payable for these services. |
| • Anesthesia | Nothing. | 100%. | Yes, prior MAP approval is required. If MAP approval is not obtained, NO benefits are payable for these services. |
| • Skilled Nursing/ Rehabilitation Facility (Semiprivate) | Nothing. | 100%, for an unlimited number of days. | Yes, prior MAP approval is required. If MAP approval is not obtained, NO benefits are payable for these services. |
| • Treatment of Psychiatric Disorder (in a Psychiatric or General Hospital) | Nothing. | 100%, up to 60 days per Calendar Year. | Yes, prior MAP approval is required. If MAP approval is not obtained, NO benefits are payable for these services. |

| Type of Service | You Pay | Plan Pays | Cost Containment Programs apply (Yes/No) |
|---|---|---|---|
| • Rehabilitation of Alcoholism or Drug Abuse | Nothing. | 100%, up to 30 days per Calendar Year. | Yes, prior MAP approval is required. If MAP approval is not obtained, NO benefits are payable for these services. |
| • Organ Transplants (non-experimental) | Nothing. | 100%. | Yes, prior MAP approval is required. If MAP approval is not obtained, NO benefits are payable for these services. |
| • Maternity Care | Nothing. | 100%. | Yes, prior approval is required. All Pregnant women and Covered Dependents must enroll in the Trust office's Healthy Baby Program. If not enrolled in the Healthy Baby Program NO benefits are payable for these services. |
| • Newborn Baby Care (includes nursery charges) | Nothing. | 100%. | Yes, prior approval is required. All Pregnant women and Covered Dependents must enroll in the Trust office's Healthy Baby Program. If not enrolled in the Healthy Baby Program NO benefits are payable for these services. |

## OUTPATIENT BENEFITS

| Type of Service | You Pay | Plan Pays | Cost Containment Programs apply (Yes/No) |
|---|---|---|---|
| • Emergency Room Treatment | If HCVM Provider: Nothing.<br><br>If non-HCVM Provider: Deductible and 20%. | If HCVM Provider: 100%.<br><br>If non-HCVM Provider: 80% to Out Of Pocket Maximum; 100% thereafter. | No. |

| Type of Service | You Pay | Plan Pays | Cost Containment Programs apply (Yes/No) |
|---|---|---|---|
| • Treatment of Psychiatric Disorder (includes counseling, testing and marriage counseling) | Nothing. | 100%, up to the maximum number of visits per Calendar Year as approved by MAP. | Yes, prior MAP approval is required. If MAP approval is not obtained, NO benefits are payable for these services. |
| • Rehabilitation of Alcoholism or Drug Abuse (includes counseling and testing) | Nothing. | 100%, up to the maximum number of visits per Calendar Year as approved by MAP. | Yes, prior MAP approval is required. If MAP approval is not obtained, NO benefits are payable for these services. |
| • Surgery | If HCVM Provider: Nothing.  If non-HCVM Provider: Deductible and 20%. | If HCVM Provider: 100%.  If non-HCVM Provider: 80% to Out Of Pocket Maximum; 100% thereafter. | No. |
| • Second & Third Surgical Opinion Exams | If HCVM Provider: Nothing.  If non-HCVM Provider: Deductible and 20%. | If HCVM Provider: 100%.  If non-HCVM Provider: 80% to Out Of Pocket Maximum; 100% thereafter. | No. |
| • Non-Hospital Diagnostic Lab & X-ray | If HCVM Provider: Nothing.  If non-HCVM Provider: Nothing. | If HCVM Provider: 100%.  If non-HCVM Provider: 100%. | No. |

| Type of Service | You Pay | Plan Pays | Cost Containment Programs apply (Yes/No) |
|---|---|---|---|
| • Chemotherapy & Radiation | If HCVM Provider: Nothing.<br><br>If non-HCVM Provider: Nothing. | If HCVM Provider: 100%.<br><br>If non-HCVM Provider: 100%. | No. |
| • Anesthesia | If HCVM Provider: Nothing.<br><br>If non-HCVM Provider: Nothing. | If HCVM Provider: 100%.<br><br>If non-HCVM Provider: 100%. | No. |
| • Physician Home or Office Visits (Medically Necessary) Includes coverage for Podiatrists. | If HCVM Provider: $4 Co-payment per visit.<br><br>If non-HCVM Provider: Deductible and 20%. | If HCVM Provider: Following Co-payment, 100%.<br><br>If non-HCVM Provider: 80% to Out Of Pocket Maximum; 100% thereafter. | No. |
| • Voluntary Sterilization | If HCVM Provider: $4 Co-payment per visit.<br><br>If non-HCVM Provider: Deductible and 20%. | If HCVM Provider: Following Co-payment, 100%.<br><br>If non-HCVM Provider: 80% to Out Of Pocket Maximum; 100% thereafter. | No. |
| • Infertility/Infertility Procedures (Artificial Insemination, In-Vitro Fertilization, Embryo Placement, Gamete Intrafallopian Transfer [GIFT], or any other Infertility Procedures) | 100%. | Nothing. Infertility/Infertility Procedures are not covered benefits. | Not applicable. Not Covered Benefits. |

| Type of Service | You Pay | Plan Pays | Cost Containment Programs apply (Yes/No) |
|---|---|---|---|
| • Surgical Dental Care | Nothing. | 100%. | Services must be rendered by Boston Dental. If services are not rendered by Boston Dental, NO benefits are payable for these services. |
| • Home Health Care | Nothing. | 100%. | Yes, prior MAP approval is required. If MAP approval is not obtained, NO benefits are payable for these services. |
| • Hospice Care | Nothing. | 100%. | Yes, prior MAP approval is required. If MAP approval is not obtained, NO benefits are payable for these services. |
| • Chiropractic Care | $4 Co-payment per visit. | Following Co-payment 100% up to the maximum number of visits as approved by MAP. | Yes, prior MAP approval is required and services must be rendered by an approved MAP Provider. If MAP approval is not obtained and approved MAP Provider does not render services, NO benefits are available for these services. |
| • Maternity Care | Nothing. | 100%. | Yes, prior approval is required. All Pregnant women and Covered Dependents must enroll in the Trust office's Healthy Baby Program. If not enrolled in the Healthy Baby Program NO benefits are payable for these services. |

| Type of Service | You Pay | Plan Pays | Cost Containment Programs apply (Yes/No) |
|---|---|---|---|
| • Physical, Speech and Occupational Therapy (Note: Review for Medical Necessity may be required) | If HCVM Provider: Nothing.<br><br>If non-HCVM Provider: Deductible and 20%. | If HCVM Provider: 100%.<br><br>If non-HCVM Provider: 80% to Out Of Pocket Maximum; 100% thereafter. | Yes, if services are connected to an Inpatient Hospital stay, then prior MAP approval is required. If MAP approval is not obtained, NO benefits are payable for such services. |
| • Childbirth Classes | If HCVM Provider: Nothing.<br><br>If non-HCVM Provider: Nothing. | If HCVM Provider: 100%.<br><br>If non-HCVM Provider: 100%. | No. |
| • Cardiac Rehabilitation Services | If HCVM Provider: Nothing.<br><br>If non-HCVM Provider: Deductible and 20%. | If HCVM Provider: 100%.<br><br>If non-HCVM Provider: 80% to Out Of Pocket Maximum; 100% thereafter. | No. |
| • Nursing Services | If HCVM Provider: Nothing.<br><br>If non-HCVM Provider: Nothing. | If HCVM Provider: 100%.<br><br>If non-HCVM Provider: 100%. | No. |
| • Oxygen, Medical Equipment, Supplies (Includes Hearing Aids) | If HCVM Provider: Nothing.<br><br>If non-HCVM Provider: Nothing. | If HCVM Provider: 100%.<br><br>If non-HCVM Provider: 100%. | Yes, for Durable Medical Equipment, prior MAP approval is required. If MAP approval is not obtained for Durable Medical Equipment, NO benefits are payable for such services. |

| Type of Service | You Pay | | Plan Pays | | Cost Containment Programs apply (Yes/No) |
|---|---|---|---|---|---|
| • Ambulance (Includes coverage for elderly van service) | If HCVM Provider: Nothing. | If non-HCVM Provider: Nothing. | If HCVM Provider: 100%. | If non-HCVM Provider: 100%. | No. |
| • Alternative Care (Acupuncture, Naturopathy, Homeopathy and Nutrition Counseling) | Nothing. | | 100%. | | Yes, prior MAP approval is required and services must be rendered by an approved MAP Provider. If MAP approval is not obtained and approved MAP Provider does not render services, NO benefits are payable for these services. |
| • Prescription Drugs (includes contraceptives whether oral or other, and smoking cessation products) | $4 Co-payment generic/$10 Co-payment brand name. | | Following Co-payment, 100%. | | Benefits are provided through the Express Scripts, Inc. (ESI) Pharmacy Network. Prescriptions must be purchased through the ESI Network for benefits to be payable. Voluntary Open Formulary Program also applies whereby the pharmacist may substitute your prescription drug with a less costly, therapeutically equivalent preferred drug. The preferred drug will only be dispensed upon your physician's approval. |

| Type of Service | You Pay | Plan Pays | Cost Containment Programs apply (Yes/No) |
|---|---|---|---|
| **PREVENTIVE CARE** | | | |
| • Physical Exams (Adults/children age 1 and over.)<br><br>X-ray, Lab and Preventive Screening Tests performed in conjunction with the Physical Exam do <u>not</u> accumulate towards the Calendar Year maximum. | *Adults*<br><u>If HCVM Provider:</u><br>$4 Co-payment per visit.<br><br><u>If non-HCVM Provider:</u><br>Deductible and 20%.<br><br>*Children (age 1 through 19)*<br><u>If HCVM Provider:</u><br>$2 Co-payment per visit.<br><br><u>If non-HCVM Provider:</u><br>Deductible and 20%. | *Adults*<br><u>If HCVM Provider:</u><br>Following Co-payment, 100% up to a maximum of one exam per Calendar Year.<br><br><u>If non-HCVM Provider:</u><br>80% to Out Of Pocket Maximum; 100% thereafter up to a maximum of one exam per Calendar Year.<br><br>*Children (age 1 through 19)*<br><u>If HCVM Provider:</u><br>Following Co-payment, 100% up to a maximum of one exam per Calendar Year.<br><br><u>If non-HCVM Provider:</u><br>80% to Out Of Pocket Maximum; 100% thereafter up to a maximum of one exam per Calendar Year. | No. |
| • Pap and Mammogram Screening Tests | <u>If HCVM Provider:</u><br>Nothing.<br><br><u>If non-HCVM Provider:</u><br>Deductible and 20%. | <u>If HCVM Provider:</u><br>100%.<br><br><u>If non-HCVM Provider:</u><br>80% to Out Of Pocket Maximum; 100% thereafter. | No. |

| Type of Service | You Pay | Plan Pays | Cost Containment Programs apply (Yes/No) |
|---|---|---|---|
| • Well Baby Care (birth to age 1; including Routine Immunizations and Lead Screenings.) | If HCVM Provider: Nothing. <br><br> If non-HCVM Provider: Deductible and 20%. | If HCVM Provider: 100%. <br><br> If non-HCVM Provider: 80% to Out Of Pocket Maximum; 100% thereafter. | No. |
| • Immunizations (Routine and Medically Necessary) | If HCVM Provider: $4 Co-payment per visit. (Co-payment is waived if immunization is given at the time of a medically necessary office visit.) <br><br> If non-HCVM Provider: Deductible and 20%. | If HCVM Provider: Following Co-payment, 100%. <br><br> If non-HCVM Provider: 80% to Out Of Pocket Maximum; 100% thereafter. | No. |
| • Family Planning Services | If HCVM Provider: $4 Co-payment per visit. (Co-payment is waived for X-ray, Lab or preventive screenings tests performed in conjunction with Family Planning visit.) <br><br> If non-HCVM Provider: Deductible and 20%. | If HCVM Provider: Following Co-payment, 100%. <br><br> If non-HCVM Provider: 80% to Out Of Pocket Maximum; 100% thereafter. | No. |

Disclaimer    The information contained in this summary is very general in nature and is an informational way of providing basic information about the Plan design. However, the Plan Document and/or Master Policies contain actual rules and provisions of the Plan and will govern in the event of any discrepancies.

**EXHIBIT E**

# GREATER BOSTON HOTEL EMPLOYEE, LOCAL 26, TRUST FUNDS

### 20 PARK PLAZA, SUITE 900, BOSTON, MASSACHUSETTS 02116

#### TELEPHONE 451-0318

*Chairman and Trustee*
James T. Stamas

*Treasurer and Trustee*
Janice Loux
Local 26

*Administrator*
Amanda Chan

*Trustees*
Robin Cady
Local 26
Henry Green
Local 26
John Hopkins
Omni Parker House
David Colella
The Colonnade Hotel

February 11, 2000

Dear Local 26 Member:

Our improved medical insurance now allows you to choose your family doctor from the hundreds of practitioners that form the HCVM network, and you may choose your own specialists from the same listing. Most services are covered at 100% with only a $4.00 copayment. **Remember, after March 12, 2000, the Boston Evening Medical Center and their affiliates will no longer be covered as part of your insurance plan.** By now you should have received your new Express Scripts prescription cards and your new MED TAC identification cards. If you have not, please contact the Greater Boston Hotel Employees Local 26, Trust Funds Office at (617) 451-0318.

I hope you will take advantage of our improved medical insurance and all of the other Local benefits. If you have any questions about the benefits, please call Local 26 Benefits Director Robin Cady at (617) 423-3335.

Sincerely,

Amanda Chan
Fund Administrator

Caro Membro Da Local 26:

Com o nosso seguro médico melhorando, permete-nos a partir de agora escolher o médico que faz parte do plano, bem como escolher os vossos próprios médico especialistas da mesma lista. A maioria dos serviços estão cobertos a 100% mas com copagamento de $4.00 . **Não esquecer que depois de Março 12 próximo, não poderemos utilizar " The Boston Evening Medical Center" bem como os seus afiliados, porque não fazem parte do plano de seguro concerteza que você já recebeu os novos cartões de receitas médicas e de assistência médica.** Se não recebeu ainda os referidos cartões queira contactar os nossor escritórios esperamos que você continua a tirar proveito do novo plano médico melhorando bem como todos os outros benefícios do Local 26, se você tem algumas perguntas a fazer acerca dos benefícios, queira fazer o favor de chamar a Directora de Benefícios Robin Cady pelo telefone (617) 423-3335.

Querido miembro del Local 26:

Nuestro major seguro Medico ahora les permite Elejir su propio Doctor de una lista de Dotores que forma la HCVM cadena, usted podra elejir a su propio Especialista de la misma lista. Casi todos los servicios estan cubiertos al 100% con un pago de $4.00. **Recuerde, despues de Marzo 12, 2000 el Boston Evening Medical Center y sus Afiliados no estaran cubiertos, no seran parte de su Seguro.** Ya usted debe haber recibido su Tarjeta de Prescipcion ( Express Scripts), y su nueva Tarjeta de Identificacion de MED TAC si no las ha recivido, por favor llame a la Oficina Greater Boston Hotel Employees Trust, Local 26 Trust Funds al (617) 451-0318. Yo deseo que aproveche el mejoramiento de nuestro Seguro Medico y Todos los Otros Beneficios del Local 26. Si tiene alguna pregunta acerca de los beneficios, por favor llame a Robin Cady, Directora de Beneficios del Local 26 al (617) 423-3335.

**EXHIBIT F**

### THIS IS YOUR COMPANY HEALTH PLAN IDENTIFICATION CARD

4

Enter Your Social Security As
Your Employee I.D. If You Request an
Additional Card For Your Spouse,
Include Your Number On That Card.

For Prompt Payment Your
Social Security Number Must Appear On
All Bills and Correspondence.

Sign Card on The reverse Side.

Present Card To Provider or Service.

Have Itemized bill Sent To MED TAC.





MED TAC CLAIM CENTER
P.O. BOX 9110
NEWTON, MA 02460
617-244-0222
800-347-9355

ALL CLAIMS AND CORRESPONDENCE MUST BE DIRECTED TO
THE ABOVE ADDRESS

```
*EMPLOYEE ID:        -  -
GREATER BOSTON HOTEL/LOCAL26
CONTACT MAP AT 617-773-4288
PRIOR TO HOSP.ADMIT OR CHIRO
MENTAL HEALTH OR ADDICTION
```
PROVIDER'S STANDARD CLAIM FORM ACCEPTABLE

# EXHIBIT G

2

# CHANGE REQUEST

## GREATER BOSTON HOTEL
### LOCAL 26, TRUST FUND

**MED TAC**
A TIERNEY COMPANY

You must provide us with your signature and the date signed. Check and complete all that is applicable to avoid delays in processing. Please print clearly.

| Social Security No. | | | Employer Name: | *The Brasserie JO* | | |
|---|---|---|---|---|---|---|

| | | Last Name (employee) (Current) | First | Middle |
|---|---|---|---|---|
| **NAME** | | WILLIAMS | DAVID | FRANK |
| | Previous Name | | | |

| **ADDRESS** ☒ | New Home Address | Street 151 WHITE ST | City BELMONT | State MA | Zip 02478 |
|---|---|---|---|---|---|

| **BENEFICIARY** ☐ | Name | | Relationship |
|---|---|---|---|

| **STATUS CHANGE** | My previous coverage terminated on: | Reason for termination of previous coverage: |
|---|---|---|

| **COVERAGE ELECTION** | I am now applying for Health Insurance for:   ☐ MYSELF    ☒ MYSELF & DEPENDENTS |
|---|---|
| | Spouse's Employer Name and Address (if unemployed write "unemployed") |
| | The consent of the spouse is required if employee is electing to drop him/her as a dependent. |
| | *Spouse must sign this consent at the Trust Office.*    Spouse Signature: |

| **REASON FOR REFUSAL** | If **NOT** accepting medical or dental for dependents or dropping medical or dental for yourself or your dependents, please check the reason why: |
|---|---|
| | COVERED UNDER:   ☐ SPOUSE'S PLAN    ☐ HMO    ☐ OTHER (SPECIFY) _____ |
| | ☐ NOT COVERED UNDER ANY OTHER PLAN AND **DO NOT** WISH TO ENROLL IN THIS PLAN. |
| | **I understand that late enrollment limitations may apply if I desire to enroll for such benefits in the future.** |

| **DEPENDENT** | SPOUSE- Last Name | First | Middle | Spouse's Date of Birth | | | Marriage Date | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | mo | day | yr | mo | | yr |
| **ADD** ☒ | DEELEY | TARA | LYNN | 10 | 7 | 73 | 4 | 13 | 2 |
| | To Enroll a Domestic Partner, Call the Trust Office at (617)-451-0381 | | | | | | | | |

| | First Name | Middle | Last Name | Social Security # | Relation | Birth date M/D/Y |
|---|---|---|---|---|---|---|
| **Drop** ☐ | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

I AUTHORIZE the above changes.

I AUTHORIZE any provider of service, medical related facility, insurance company, trustees, employer, MED TAC or any third party contracting with MED TAC and/or my employer for purposes of providing claims administration, utilization review and like functions, having information available as to diagnosis, treatment or services provided to me or any eligible dependents to give to my employer, MED TAC or their legal representative, any and all such information.

I AUTHORIZE payment directly to the provider of service unless otherwise instructed by me.

X _(signature)_   EMPLOYEE SIGNATURE                    3/21/2   DATE SIGNED

| | | Employer Account Number: | |
|---|---|---|---|
| Medical Leave ☐ | | Personal Leave ☐ | |
| Termination of Employment | Effective Date | Voluntary ☐ | Involuntary Basis ☐ |
| Other ☒ | He is getting married & would like to add his spouse | | |

Authorized Signature of Employer _(signature)_          Title HR Coordinator   Date 3-21-02

**EXHIBIT H**

## DAVID WILLIAMS

On March 21, 2002 David came to HR to sign up his fiancé for medical coverage effective April 12, 2002, the day they were getting married.

Paperwork was sent to MedTac for processing on 03-21-02.

On Monday, August 11, 2002 Michael Glick informed HR that David's wife had a baby on Sunday August 10, 2002. The hotel sent flowers to his home address that week. When I saw David that week, I congratulated him on the birth of his baby. I told him that he needed to enroll the baby in MedTac for coverage and he stated that he knew he had to do so and would take care of it.

He never stopped by the Human Resources office until several months later.
On October 21, 2002, David came to HR with a bill for the baby in the amount of $1,863 for services rendered on 9/12/02. At that point David admitted that he had not enrolled the baby because when the baby was born they had two types of insurance and they did had not decided which one they would be using. Jenn called Fiona and she was told that David could fill out an enrollment form and could backdate it. She was also instructed by Fiona to write a letter stating that due to a clerical error, the enrollment forms were sent late.

Jenn never heard back from Tara or David Williams after that day. He did come to the office to deal with payroll related matters on several occasions but never mentioned anything to Jenn or to myself about any outstanding bills.

Ana Petrovich
Director of Human Resources

**EXHIBIT I**

**DRAFT**

Minutes of the Meeting of the Board of Trustees
GREATER BOSTON HOTEL EMPLOYEES/LOCAL 26 TRUST FUNDS
Wednesday, October 8, 2003
The Colonnade Hotel
Boston, Massachusetts


Those Present:        Union Trustees                    Management Trustees
                      Janice Loux                       James T. Stamas
                      Jeffrey K. Nelson                 David Colella
                                                        Doug Ridge


Also Present:         Jeffrey H. Lerer, Esq., Foley, Hoag & Eliot, LLP, Legal Co-
                      Counsel; Domenic Bozzotto, Esq., Law Office of Domenic
                      Bozzotto, P.C., Legal Co-Counsel; Jack Nicolas, KD Benefits,
                      Consultant; Fiona Ritchie, Administrator; Michael Ross, CPA,
                      Ross, Mastrogiovanni & Co., Auditor


I.     CALL TO ORDER

       The meeting was called to order by Mr. Stamas at 8:40 AM.

II.    HEALTH & WELFARE FUND

       Mr. Nicolas reported on the results of his firm's RFP for life insurance benefits.
       He recommended a two-year proposal from Medical Life, an A-rated company
       owned by Blue Cross Blue Shield of Illinois. Mr. Nicolas noted that Medical
       Life's proposal includes all but one of the benefits currently offered by AIG, plus
       additional payments under certain circumstances. The change to Medical Life
       would save approximately $75,000 per year. Ms. Loux made a motion to accept
       Medical Life's proposal, provided the firm includes the exposure and
       disappearance rider currently in force. The motion was seconded by Mr. Colella
       and passed unanimously.

       Mr. Nicolas then distributed claims and revenue data and updated projections for
       the fund. He stated that hours and revenue have been consistent with prior
       projections, and the changed plan design has resulted in lower incurred claims.
       Mr. Stamas asked that KD Benefits consult with the management trustees to test
       hours projections for 2004 and 2005.

       Mr. Nicolas and Mr. Ross left at 9:55 AM when the meeting went into recess.

       The meeting resumed at 10:00 AM to hear a final appeal of a claims denial. Mr.
       Lerer invited member David Williams, his wife Tara Williams, and his attorney

**DRAFT**

Stefani Field to present an oral argument at the meeting, and submit a written summary and other documentation as appropriate by October 22, 2003 for consideration by the Trustees.

Ms. Field stated the following: David Williams has been employed at the Colonnade hotel for over five years and has had insurance throughout that time. Tara Williams discovered she was pregnant in December 2001, and found out approximately sixteen weeks later that the baby had a congenital defect. David and Tara Williams were married in April 2002. Prior to the marriage, David Williams contacted the human resources department at the hotel to enroll his wife and baby for family coverage. He explained that his wife had her own insurance, but that the baby would need to come on to the plan. Jenn [Jennifer Ackley] told him coverage would be issued subsequent to the marriage. Mr. Williams enrolled his wife and baby after the marriage. Money was withheld from his check for family coverage. The Williamses did not receive paperwork or identification cards after enrolling Tara on the plan. Mr. Williams contacted the human resources department to verify the coverage. Jenn told him his coverage was fine and to use his social security card as a form of identification for the hospital. Mr. Williams contacted MED TAC sometime in July 2002 to ensure the baby would be covered. The representative told him he was covered and the hospital would notify MED TAC when the baby was born. Mr. Williams did not know the name of the representative with whom he spoke, but called the number on his MED TAC card.

Ms. Field further stated that Tara Williams gave birth at Brigham and Women's Hospital. The baby, Samuel Williams, was taken to Children's Hospital immediately for surgery. Mr. and Mrs. Williams described their baby's medical condition and the means taken to correct it. Ms. Field stated that the baby's claims from August 10, 2002 through approximately September 20, 2002 were denied, giving rise to this appeal.

Mr. Lerer asked Mr. Williams if he was aware the plan's hospital pre-approval requirement. Mr. Williams said he was not, and none of the people he had asked about coverage told him about it. Ms. Field further stated that had Mr. Williams known about the plan's Healthy Baby Program, Mrs. Williams would have enrolled in it. On behalf of the Trustees, Mr. Lerer encouraged Mr. Williams and Ms. Field to send a written summary within fourteen days for consideration by the Trustees. Mr. and Mrs. Williams and Ms. Field left the meeting at 10:30, following which there was a recess.

III.     REPORT FROM LEGAL COUNSEL

The meeting resumed in full session at 11:45 AM. Mr. Bozzotto reported that based on his contract negotiations with Boston Dental, he is recommending the Trustees renew Boston Dental's contract for eighteen months retroactive to March 1, 2003 with a 7 ½% increase. Mr. Stamas made a motion to accept Mr.

**DRAFT**

Bozzotto's proposal. The motion was seconded by Ms. Loux and passed unanimously.

Mr. Bozzotto reported that as the Radisson's past due balance is still unpaid, a demand letter will be sent.

IV.    ADMINISTRATOR'S REPORT

Ms. Ritchie reported that the payroll audit findings would be billed to employers in the coming week.

Mr. Stamas asked that Trustees review the minutes of the June 17, 2003 meeting and call with any changes or comments.

V.    NEXT MEETING

The next meeting is scheduled for Thursday, November 13, 2003 at the Sheraton Boston Hotel.

VI.    ADJOURNMENT

Due to time constraints, the meeting was adjourned at 12:15 PM.

# EXHIBIT J

**MED TAC**
A TIERNEY COMPANY

# CHANGE REQUEST

## GREATER BOSTON HOTEL EMPLOYEE'S, LOCAL 26, TRUST FUND

You must provide us with your signature and the date signed. Check and complete all that is applicable to avoid delays in processing. Please print clearly.

**PART 1 - TO BE COMPLETED BY EMPLOYEE**

Employer Name: **Colonnade Hotel**

| Social Security No. | Last Name (employee) (Current) | First | Middle |
|---|---|---|---|
| | **WILLIAMS** | **DAVID** | **F** |

**NAME** ☐
Previous Name

**ADDRESS** ☐
New Home Address — Street: **151 WHITE ST**  City: **BELMONT**  State: **MA**  Zip: **02478**

**BENEFICIARY** ☐
Name: **SAMUEL WILLIAMS**  Relationship: **SON**

**STATUS CHANGE**
My previous coverage terminated on: | | |
Reason for termination of previous coverage:

**COVERAGE ELECTION**
I am now applying for Health Insurance for:   ☐ MYSELF   ☐ MYSELF & DEPENDENTS
Spouse's Employer Name and Address (if unemployed write "unemployed")

The consent of the spouse is required if employee is electing to drop him/her as a dependent.
*Spouse must sign this consent at the Trust Office.*   Spouse Signature: _____

**REASON FOR REFUSAL**
If **NOT** accepting medical or dental for dependents or dropping medical or dental for yourself or your dependents, please check the reason why:

COVERED UNDER:   ☐ SPOUSE'S PLAN   ☐ HMO   ☐ OTHER (SPECIFY) _____
☐ NOT COVERED UNDER ANY OTHER PLAN and **DO NOT** WISH TO ENROLL IN THIS PLAN.

**I understand that late enrollment limitations may apply if I desire to enroll for such benefits in the future.**

**DEPENDENT**

| SPOUSE - Last Name | First | Middle | Spouse's Date of Birth mo / day / yr | Marriage Date mo / day / yr |
|---|---|---|---|---|

**ADD** ☑
**Drop** ☐

To Enroll a Domestic Partner, Call the Trust Office at (617)-451-0381

| First Name | Middle | Last Name | Social Security # | Relation | Birth date M/D/Y |
|---|---|---|---|---|---|
| **SAMUEL** | **A** | **WILLIAMS** | **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** | **SON** | **8/10/02** |

*RECEIVED SEP 26 2002 GREATER BOSTON HOTEL EMPLOYEES TRUST FUND*

**AUTHORIZE** the above changes.
**AUTHORIZE** any provider of service, medical related facility, insurance company, trustees, employer, MED TAC or contracting with MED TAC and/or my employer for purposes of providing claims administration, utilization review and like functions, having information available as to diagnosis, treatment or services provided to me or my eligible dependents to give to my employer, MED TAC or their legal representative, any and all such information.
**AUTHORIZE** payment directly to the provider of service unless otherwise instructed by me.

X _____ EMPLOYEE SIGNATURE   **9/17/02** DATE SIGNED

**PART 2 - TO BE COMPLETED BY THE EMPLOYER**   Employer Account Number:

| Medical Leave ☐ | Personal Leave ☐ |
|---|---|
| Termination of Employment ☐   Effective Date | Voluntary ☐   Involuntary Basis ☐ |
| Other ☐ | |

Authorized Signature of Employer _____   Title **HR Coord**   Date **9-19-02**

**MED TAC USE ONLY**   Received **SEP 23 2002**   Processed

| | CLASS | MO. | DAY | YR. | | CLASS | MO. | DAY | YR. |
|---|---|---|---|---|---|---|---|---|---|

| OPTIONAL LIFE | CIRCLE EXCEPTIONS MED SURV DENT VGA LIFE AD&D WKLY LTD | STATUS | PROFILE | BILLING CYCLE | MO. BK. CHG. MO. BK. CR. |
|---|---|---|---|---|---|

MED TAC - YELLOW COPY     EMPLOYER - WHITE COPY

**EXHIBIT K**

ATTN: Fiona

② pages.

## CASE NOTES
### Modern Assistance Programs, Inc.
### Medical Case Management Dept.

**Samuel Williams (Deeley) (5346)**                Intake Date: **9/17/02**

9-17-02-Linda 617-355-4273 @ Childrens Hosp called for precert for gastroeschesis-checked babylink---DID NOT FILL OUT-ALSO CLIENT WAS NOT EVEN IN COMPUTER. Had baby on 8-10-02(unknown hosp) was admitted to childrens on 8-10-02 on the same day-PT STILL IN HOUSE AS OF TODAY!!!. Mom has harvard pilgrim but baby never added to plan. IR

11/1/2002: 10/31/02 Faith from med tac re has $10,000 in MD bills but no hospital bills yet and has effective date of 8/10/02. I referred to IR's note and asked MFD if she had any knowledge of case. Called Fiona @ LU26 trust who says David signed the kid onto the plan on 9/17/02. Two issues-

# 1 precert wasn't done  #2 if parent doesn't sign child onto plan within 30 days (and they didn't) the child is subject to pre-existing condition. We are not sure about the mom's coverage except for Irene's note. Fiona says Tony Odem @ Med Tac is someone who knows all the rules. I left VM for Irene to f/u tomorrow and let fiona and faith know I'd call them tomorrow. Marie asked me to update JGK on this and I did GF

11/4/2002: 11/1/02-per Fiona after speaking to med tac there is no pre-existing issue but the precert issue remains. Fiona asked me to give them a call to let them know bills have been showing up from a hospital admission that was not precerted and we're calling to investigate the circumstances and to see if there is other coverage. I called at 1:50pm and left VM for them to call me or Irene Gf

11/1/02 spoke to IR who didn't have much to add from 9/17, but restating we could not precert the hospital stay 1 month after the fact. I spoke to Fiona re I would like to contact the family but I am reluctant to call them with news that all of the baby's hospital claims may not be paid. She recommended I ask med tac to get pre-x stuff in motion to see how it plays out since that is their function. I spoke to Faith at Med Tac and stated that baby wasn't signed on till 9/17/02, this conflicts with the info on their computer. Also, no precert for birth or children's hosp admission. She will look into this more and call me back. She also states that mom was on plan from April 02 (or was it march?) but I told her that conflicts with our info about her being on Harvard Pilgrim. Told her I would like to contact family but want to get insurance coverage info first GF

11/12/2002: 11/4/02 Per Teresa Davis at Medtac over $10,000 in doctor's claims. Baby born in St E's on 8/10 and transferred. Per Fiona

11/8/02 left message for Tara to call me or Irene GF ADD: spoke to Tara. Baby was born with intestines outside his abdomin. They were aware of this throughout the pregnancy and planned to induce her 2 weeks before her due date but the baby arrived 3 1/2 wks before due date. They needed to do surgical repair ASAP and baby was transferred to Children's 2 days before mother was released from the other hospital. Baby discharged on 9/17/02. Mom was on Harvard Pilgrim throughout the pregnancy. She has that insurance through her ex-husband until the end of 2002. Claims her husband signed up for family coverage when she was 6 months pregnant. Doesn't think Harvard Pilgrim will cover any tx for the baby because child is not dependent of ex-husband. She believes child was admitted to Children's under the assumption that he was covered by Harvard Pilgrim. She will try to contact Children's and Harvard Pilgrim and see what she can find out. Told her no hospital bills have arrived at Med Tac.

Baby is doing very well. I explained our role to her and said we'd look into the matter with the trust and med tac and get back to her GF

11/12/02 faxed notes to Fiona R. @ lu26 trust and reviewed case w/ MFD. Med Tac will deny coverage due to no babylink and no hosp precert. I left vm asking client to call me to advise Tara of this info and advise her to review appeal info on EOR. GF

                                                                1                      8/20/03

## CASE NOTES
## Samuel Williams (Deeley) (5346)          Intake Date: **9/17/02**

to review appeal info on EOB. GF

11/15/02 playing phone tag w/ Tara (mom). Today I left a VM to ask for anyone here if I am not available. She needs to be informed that bills from Sam's Children's Hospital stay immediately after his birth will be denied by Med Tac claims examiners due to no Babylink and no hospital precert. She should look on Med Tac's EOB for appeal process info. GF

11-15-02-Tara called-she said that the woman in HR said that not to worry about anything thing that is will be taken care of-she also said when she filled out babylink form she was under 6 months preg thur HR. I told her how to go about the appeal and to call hr and have the babylink form faxed to Fiona and then ask the t.f for an benefit book for future keeping. IR

2                                    MAP Medical Case Management Dept.

**EXHIBIT L**



October 21, 2002

To Whom It May Concern:

Due to a clerical error David Williams ( _____ enrollment form for his new born son was sent late. The effective date should have been 8-10-02. Sorry for the mistake. I will let David know that this bill will be resubmitted to Med-Tac and taken care of. I will also let him know that his son Samuel Williams will be covered effective 8-10-02. Please let me know if there is anything else I can do.

Thank You,

Jennifer A. Ackley
Human Resource

120 Huntington Avenue, Boston, Massachusetts 02116, Telephone: (617) 424-7000, Telefax (617) 424-1717
www.colonnadehotel.com

**EXHIBIT M**

**NOTICE OF DECISION
ON CLAIM APPEAL**

**MED TAC**

A TIERNEY COMPANY
Claims Center
Established 1982

January 30, 2003

David Williams
151 White Street
Belmont, MA 02478

(Claimant) Samuel A. Williams
Employer Plan:   Greater Boston Hotel Employees Local 26
Health and Welfare Fund

S.S#:

Dear Mr. Williams:

Please let this letter serve as notice of MED TAC's decision on your appeal of the above mentioned claim. Upon review, we have determined that this claim is not payable under Greater Boston Hotel Employees Local 26 Health and Welfare Fund self-funded Employee Health Benefit Plan ("the Plan") for the following reasons:

In accordance with the terms of the Plan, benefits for Maternity and Newborn Baby Care Services are not provided to a covered person who has not enrolled in the Healthy Baby Program as required in accordance with the Schedule of Medical Benefits. Attached are copies of the pages from the plan of benefits where it specifically indicates the plan requirements regarding Maternity and Newborn Baby Care coverage. In addition the plan also requires Medical Assistance (MAP) be contacted for pre-certification for all hospital admissions. A copy of the plan is provided to each member by Greater Boston Hotel Employees Local 26 Health and Welfare Fund.

We were not aware of Samuel's birth and hospital admission until the hospital called us on the date he was discharged 9/17/02. We notified the hospital representative at that time that MAP must be contacted.

A claim was paid to CHMC Surgical Foundation for services on 9/12/02 in error. It was initially denied as we had not received the enrollment form to add Samuel to your policy. However it should also have been denied for the reasons as stated above. Services incurred after discharge from the hospital are eligible for benefits.

Sincerely,

Louann Weston
Sr. Claims Examiner

**Attention Claimant:**
Please see attached notice of the Plan's voluntary appeal procedures for important information on your rights regarding this denial.

**EXHIBIT N**

# GOLD, ALBANESE, BARLETTI & VELAZQUEZ

ROBERT FRANCIS GOLD*◦◇
JUDY T. ALBANESE*◦
JAMES N. BARLETTI*
RADAMES VELAZQUEZ JR*

ATTORNEYS & COUNSELORS AT LAW
50 CONGRESS STREET, STE. 225
BOSTON, MA. 02109
TELE: (617) 723-5118  FAX: (617) 367-8840

Web Address: www.goldandalbanese.com
Main E-Mail Address: main@goldandalbanese.com

REPLY TO BOSTON

DIANE C. DILLON*
STEFANIE FIELD◦
NAOMI LINECCHIA*
PETER L. MACEAM*◦
MARC H. SCHOLLEY*◦
JOANNE SOSOLI SHIP◦◦◇

* MEMBER OF NJ BAR
◦ MEMBER MA BAR
◇ MEMBER OF NY BAR

OF COUNSEL
TIERAM PLATZER◦

MED TAC
Claims Department
PO Box 9110
Newton, MA 02160

August 7, 2003

RE:    Our Client : David Williams and Tara Williams
       Your Insured:  David Williams
       Group: Greater Boston Hotel
       Employee Number:

## SENT VIA FACSIMILE, FIRST CLASS AND CERTIFIED MAIL/RRR

Dear Sir/Madam:

Please be advised that this office represents the legal interests of Mr. And Mrs. Williams in connection with MED TAC's denial of insurance coverage relative to Mrs. Williams' pregnancy, delivery and the subsequent medical problems suffered by her son at birth.

In March of 2002, Mr. Williams spoke with the human resources department at the Hotel where he is employed. He informed them that he would be getting married and was expecting a child and wished to put both Tara Williams and the baby on his health insurance. It was also determined at this time, via ultrasound, that their child had a birth defect that would result in significant health problems at birth. He was assured by human resources that the change in the policy would be made and that coverage would be available to both Mrs. Williams and their child. Approximately 8 weeks later Mr. Williams again contacted human resources to confirm that the coverage would be available and was told that they were all set.

In April, subsequent to the wedding of David and Tara Williams, MED TAC began taking out money from Mr. Williams' pay check for the family plan coverage that was to be provided. At no time did Mr. And Mrs. Williams ever receive insurance cards, information, or a health care booklet explaining their insurance coverage or what was required of them. Mr. Williams again went to the human resources department to inquire as to his coverage. He was told he was fully covered and was advised to use his social security number as his insurance Id. When their son Samuel was born, doctors diagnosed him with a rare disease called gastroschisis which required extensive medical attention.

HUDSON COUNTY NEW JERSEY OFFICE: 271 Newark Avenue, Jersey City, NJ 07302 TELE: (201) 656-4396 FAX: (201) 246-4129
MORRIS COUNTY NEW JERSEY OFFICE: 48 South Street, Morristown, NJ  TELE: (973) 326-9595 FAX (973) 326-9597
NEW YORK OFFICE: 544 Broadway Suite 200 Massapequa, New York 11758  TELE: (516) 541-0951 FAX (516) 541-0951

Since that time, Mr. And Mrs. Williams have submitted medical bills to MED TAC to be paid pursuant to their coverage but were denied same. They were advised that this denial was due to Mrs. Williams' failure to participate in the "Healthy Baby Program." Mr. And Mrs. Williams were at no time advised that she was required to participate in this program. In light of these facts, MED TAC's denial of their claim for coverage is unwarranted.

Mr. And Mrs. Williams have already timely filed their first appeal relative to this claim which MED TAC denied. This correspondence serves as Mr. And Mrs. Williams' second appeal in compliance with MED TAC's policy regarding appeals for claim denials.

I would respectfully request that a hearing be scheduled with respect to this matter as soon as possible. Likewise, please forward a copy of any and all documents pertaining to Mr. And Mrs. Williams and the coverage provided to them through MED TAC to this office. In the future, please send any and all correspondence to my attention at this office.

Should you have any questions with regard to the foregoing, kindly advise.

Very truly yours,

Stefani M. Field

RECEIVED

AUG 11 2003

MED TAC

# EXHIBIT O

14

# GREATER BOSTON HOTEL EMPLOYEES/ LOCAL 26 TRUST FUNDS

*20 Park Plaza, Suite 900, Boston, Massachusetts 02116*
*Telephone (617) 451-0318    Fax (617) 451-2676*

*Chairman and Trustee*
James T. Stamas

*Treasurer and Trustee*
Janice Loux
Local 26

*Administrator*
Fiona Ritchie

*Trustees*
Dennis Clark
    Fairmount Copley Plaza
David Colella
    The Colonnade Hotel
Henry C. Green, Sr.
    Local 26
Jeffrey K. Nelson
    Local 26

September 5, 2003

Ms. Stefani Field
Gold, Albanese, Barletti & Velasquez
50 Congress Street, Ste. 225
Boston, MA 02109

    RE:  David Williams

Dear Ms. Field:

    In response to your letter to MED TAC Corp. dated August 7, 2003, I have enclosed a copy of the Greater Boston Hotel Employees/Local 26 Benefits Book describing Health and Welfare benefits available to plan participants.

    Please be advised that the plan trustees are considering your request for a hearing and will advise you of their decision within sixty days of your request.

Sincerely,

Fiona Ritchie
Administrator

enclosure

20

**EXHIBIT P**

15

# GREATER BOSTON HOTEL EMPLOYEES/ LOCAL 26 TRUST FUNDS

### 20 Park Plaza, Suite 900, Boston, Massachusetts 02116
### Telephone (617) 451-0318    Fax (617) 451-2676

*Chairman and Trustee*
James T. Stamas

*Treasurer and Trustee*
Janice Loux
  Local 26

*Administrator*
Fiona Ritchie

*Trustees*
David Colella
  The Colonnade Hotel
Henry C. Green, Sr.
  Local 26
Jeffrey K. Nelson
  Local 26

October 1, 2003

Ms. Stefani Field
Gold, Albanese, Barletti & Velasquez
50 Congress Street, Ste. 225
Boston, MA 02109

RE: David Williams

Dear Ms. Field:

In response to your letter to MED TAC Corp. dated August 7, 2003, the plan trustees have granted your request for a hearing concerning the denial of medical claims for Samuel Williams. The hearing has been scheduled as an agenda item for the trustees' next meeting, to be held on Wednesday, October 8, 2003 at the Colonnade Hotel. The meeting will be in the Salon Prive in Brasserie Jo, and we ask that you arrive by 9:30 AM.

The meeting will provide an opportunity for your client to present his case, along with any relevant additional information that will help the trustees to make a determination. If you will not be able to attend, please advise me at your earliest opportunity.

Sincerely,

Fiona Ritchie
Administrator

20

**EXHIBIT Q**

16

# GOLD, ALBANESE, BARLETTI & VELAZQUEZ

ROBERT FRANCIS GOLD*○◊
JUDY T. ALBANESE*○
JAMES N. BARLETTI*
RADAMES VELAZQUEZ JR*

* MEMBER OF NJ BAR
○ MEMBER OF MA BAR
◊ MEMBER OF NY BAR

ATTORNEYS & COUNSELORS AT LAW
50 CONGRESS STREET, STE. 225
BOSTON, MA. 02109
TELE: (617) 723-5118 FAX: (617) 367-8840

Web Address: www.goldandalbanese.com
Main E-Mail Address: main@goldandalbanese.com

REPLY TO BOSTON

SHANE C. DELEON*
STEFANI M. FIELD○
NAOMI LEVECCHIA*
PETER L. MACISAAC*
MARC B. SCHULEY*◊
JOANNE SORRENTINO*○

OF COUNSEL:
PHILIP PLATZER◊

October 20, 2003

Greater Boston Hotel Employees/
Local 26 Trust Funds
Attention:   Board of Trustees
20 Park Plaza, Suite 900
Boston, MA 02116

   **RE:**   **Our Client : David Williams and Tara Williams**
       **Your Employee:  David Williams**

**SENT VIA COURIER**

Dear Trustees:

  Pursuant to your request at the hearing that took place on October 8, 2003, please allow this correspondence to serve as a summation of the facts, as they occurred, with respect to MED TAC's denial of insurance coverage for Samuel Williams subsequent to his birth. As you are aware, MED TAC has denied coverage for Samuel, for an amount of medical bills exceeding $126,000.00, due to Mrs. Williams failure to participate in the Healthy Baby Program and for failing to contact MED TAC to inform them that Samuel had been born. As we had indicated to you during said hearing, at *no* time was Mr. or Mrs. Williams informed by either Human Resources or MED TAC that in order to receive full health care coverage Mrs. Williams would have to participate in this program. Likewise, Mr. And Mrs. Williams were advised by a representative of MED TAC, after David Williams had contacted their office for assurance, that the Hospital would be responsible for contacting MED TAC and advising them about Samuel's birth.

  In December of 2001, David and Tara discovered that they were expecting a child. At this time, David maintained insurance coverage for only himself.  Tara also had her own health insurance. It was discovered in February, via ultrasound, that David and Tara's child was suffering from a potentially life-threatening disease called gastroschesis. Tara's pregnancy was classified as high risk and they were advised that it was likely that their child would require surgery immediately upon his birth.

HUDSON COUNTY NEW JERSEY OFFICE: 271 Newark Avenue, Jersey City, NJ 07302 TELE: (201) 656-4200 FAX: (201) 646-4229
MORRIS COUNTY NEW JERSEY OFFICE: 48 South Street, Morristown, NJ  50 TELE: (973) 326-9099 FAX: (973) 326-9099
NEW YORK OFFICE: 544 Broadway Suite 200 Massapequa, New York 11758  TELE: (516) 541-0021 FAX: (516) 541-1964

It was shortly after discovering Samuel's birth defect, that David spoke with Jennifer from Human Resources in an effort to find out what he needed to do to switch his health care policy from a single status to a family plan coverage. He informed Jennifer that he would be getting married in April and was also expecting a child and wished to put both Tara Williams and the baby on his health insurance. He also explained that his child had a severe health problem that was going to require extensive medical attention upon his birth. He completed the necessary paperwork and was assured by human resources that the change in his policy would be made and that coverage would be available to both Mrs. Williams and their child. Shortly after they were married, Mr. Williams again contacted human resources to confirm that the coverage would be available and was assured that they were all set. Enclosed herein for your review, you will find a copy of David Williams' Earnings Statement for the pay periods of March 16, 2002 through March 22, 2002 and March 23, 2002 through March 29, 2002 indicating the change in status from a single insurance policy holder to a family plan policy holder. From a review of same, you will note that on March 23, 2003, money was being taken out of David's check to pay for the family plan coverage.

As the time for Tara's labor and delivery neared, David contacted a representative from MED TAC to inquire as to the procedure that must be followed after Samuel's birth. He was told that the hospital would be responsible for contacting them and informing them that their child had been born. Additionally, Even though money was being taken out of his check for the family plan coverage, David and Tara never received new insurance cards, information, or a health care booklet explaining their insurance coverage, health care benefits or what was required of them. David *again* went to the human resources department to inquire as to his coverage and was *again* assured that he was *fully* covered and was advised to use his social security number as his insurance Id.

On August 10, 2003, Tara gave birth to Samuel. As the doctors had predicted, Samuel needed emergency surgery to treat the gastroschesis. He was immediately transferred from Brigham & Woman's Hospital to Boston Children's Hospital where he underwent the required surgery. As you can imagine, this was an emotional and anxious time for David and Tara. Thankfully, Samuel's surgery was successful and today he is a healthy little boy.

Since the time of Samuel's birth, David and Tara have submitted numerous medical bills to MED TAC to be paid in accordance with their coverage but were denied same. They have been made to suffer additional anxieties and potential financial ruin as Samuel's bills surpass $126,000.00. From the beginning, David and Tara were diligent in their communications with Human Resources. David let them know immediately that he was getting married and expecting a child. He advised them that his child had a congenital birth defect that would require surgery. He followed up with his communications in an effort to insure that he would have the medical coverage to pay for the necessary medical treatment that Samuel would receive. David and Tara believed that they were following all the appropriate protocol that was required by MED TAC. Had they ever received any benefits book that explained their coverage or had human resources, upon making the change in David's policy from single to family plan, ever informed them that Tara would be required to participate in a Healthy Baby Program they would have done so immediately. They believed that they were receiving the best care possible for their unborn child.

In light of the foregoing facts, MED TAC's denial of health care coverage is without merit. I would respectfully request that the medical bills incurred on behalf of Samuel Williams be paid in full in accordance with the policy of insurance that was issued to David Williams.

Should you have any questions, please do not hesitate to contact me.

I look forward to hearing from you.

Very truly yours,

Stefani M. Field

Encls
cc:     David & Tara Williams

HUDSON COUNTY NEW JERSEY OFFICE: 271 Newark Avenue, Jersey City, NJ 07302 TELE: (201) 656-4200 FAX: (201) 646-4229
MORRIS COUNTY NEW JERSEY OFFICE: 48 South Street, Morristown, NJ  50 TELE: (973) 326-9099 FAX: (973) 326-9099
NEW YORK OFFICE: 544 Broadway Suite 200 Massapequa, New York 11758  TELE: (516) 541-0021 FAX: (516) 541-1964